No. 121,065

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KEVIN SKAGGS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

When reviewing the district court's decision on a habeas motion after the district court conducts a preliminary hearing, an appellate court applies a findings of fact and conclusions of law standard of review to determine whether the findings are supported by substantial competent evidence and whether those findings are sufficient to support its conclusions of law.

2.

A district court may extend the one-year time limitation to file a habeas motion only to prevent manifest injustice. The court's manifest injustice analysis is limited by statute to determining why the prisoner failed to file the motion within the one-year time limitation and whether the prisoner makes a colorable claim of actual innocence.

3.

To prevail on an ineffective assistance of counsel claim, a habeas prisoner must establish counsel's performance was deficient and the prisoner suffered legal prejudice as a result of that performance.

4.

An appellate court generally will not consider an allegation of ineffective assistance of counsel raised for the first time on appeal but if the quality of counsel's assistance cannot be determined from the record on appeal and the prisoner has shown at least some prior investigation into the claimed ineffectiveness, the appellate court may remand to the district court for further proceedings.

5.

To successfully allege a colorable claim of actual innocence exception to the one-year limitation period governing a habeas motion, the prisoner must establish that it was more likely than not that no reasonable juror would have convicted in light of the new evidence.

6.

An evidentiary hearing was warranted to determine whether medical photographs, a medical report, and an expert affidavit, considered in light of all the evidence at trial, raised a colorable claim of actual innocence triggering the actual innocence exception to the one-year limitation period governing a habeas motion.

7.

When a prisoner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates the actual innocence alleged, such evidence constitutes new evidence for purposes of the actual innocence gateway to excusing procedural default of a prisoner's habeas claim.

8.

A colorable claim of actual innocence constitutes extraordinary circumstances that precludes summary dismissal of a successive habeas motion.

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed December 4, 2020. Reversed and remanded with directions.

*Richard Ney*, of Ney, Adams & Miller, of Wichita, for appellant.

*Todd G. Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., STANDRIDGE, J., and MCANANY, S.J.

STANDRIDGE, J.:  Kevin Skaggs filed an untimely and successive motion for postconviction relief under K.S.A. 60-1507, alleging that two of his former attorneys were unconstitutionally ineffective and that the State wrongly withheld evidence in the underlying criminal case in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The district court denied his motion as untimely and successive without conducting an evidentiary hearing. On appeal, Skaggs claims he is entitled to an evidentiary hearing on the issue of manifest injustice and exceptional circumstances. First, he claims the ineffective assistance of counsel in his first habeas motion prevented him from filing the claims in this second motion within the one-year time limitation. Second, he claims he has presented a colorable claim of actual innocence based on new evidence under two United States Supreme Court cases—*Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), and *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)—that provide a "gateway" around any state court procedural hurdles like untimeliness and successiveness. Third, he claims the asserted colorable claim of actual innocence based on new evidence constitutes extraordinary circumstances precluding dismissal of his successive habeas motion. For the reasons stated below, we reverse the district court's decision to deny Skaggs' habeas motion as untimely and successive and remand for an evidentiary hearing to determine whether Skaggs has established the manifest injustice or exceptional circumstances sufficient to require the court to address the underlying merits of his ineffective assistance of counsel and *Brady* claims.

3

FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2007, following a six-day jury trial, Skaggs was convicted of three counts of rape, one count of aggravated criminal sodomy, two counts of sexual exploitation of a child, and one count of promoting obscenity to a minor. Terence Lober represented Skaggs leading up to and through trial. After trial but before sentencing, Lober withdrew as Skaggs' attorney, and Skaggs hired Cheryl Pilate and Rebecca Kurz of the law firm of Morgan Pilate LLC to represent him at sentencing and on direct appeal. The court sentenced Skaggs to a controlling term of 310 months in prison. Skaggs appealed his convictions and sentencing alleging, in relevant part, prosecutorial misconduct related to forensic evidence and witnesses presented by the State at trial. A panel of this court affirmed his convictions and sentence. Skaggs petitioned the Kansas Supreme Court for review, but it was denied on September 7, 2010. *State v. Skaggs*, No. 100,201, 2009 WL 2436671 (Kan. App. 2009) (unpublished opinion) (*Skaggs I*). This court issued its mandate on September 9, 2010.

Skaggs filed a timely K.S.A. 60-1507 motion on August 23, 2011. Kurz represented Skaggs in this first habeas proceeding. Although Skaggs alleged a number of ineffective assistance of counsel claims in the first habeas motion, the one claim relevant to this appeal concerns whether Lober was ineffective for failing to challenge the State's medical expert, Dr. Kelly Sinclair, on cross-examination at trial.

We pause here to explain Dr. Sinclair's trial testimony and medical findings in the underlying case. On January 22, 2005, Dr. Sinclair conducted an initial sexual assault forensic examination (SAFE exam) of B.S., the child victim, in the Emergency Department of Children's Mercy Hospital. Dr. Sinclair testified at Skaggs' trial that during this initial examination, she observed most of B.S.'s hymen was absent except for anterior remnants. Dr. Sinclair also testified that the absence of a hymen likely indicated a history of persistent trauma. Dr. Sinclair said she observed notching during B.S.'s

4

anogenital examination, which was indicative of recent trauma to that area. Based on the notching, Dr. Sinclair estimated that B.S. had suffered injury to her genital region within five days of the SAFE exam. Dr. Sinclair concluded her observations from the exam were consistent with B.S.'s statement that she had been sexually abused.

Dr. Sinclair testified that she did not take any photographs during the SAFE exam on January 22 because her camera was not working. On February 2, 2005, 11 days after the initial exam, B.S. came back to the hospital for a follow-up examination. A different doctor conducted the follow-up exam of B.S.'s anogenital region. During this exam, photographs were taken of the area with the aid of a colposcope, a camera which magnifies the vaginal area. Dr. Sinclair later reviewed the photographs and authored a report regarding B.S.'s follow-up examination. In this report, Dr. Sinclair stated that the magnified pictures showed B.S. had a "normal female genitalia with [an] intact hymen." Dr. Sinclair further stated that B.S.'s hymen had normalized. Dr. Sinclair noted that this normalization did not conflict with the detailed disclosures by B.S. of ongoing sexual contact with an adult male. Dr. Sinclair acknowledged the pictures reflected that B.S.'s hymen was intact, but she reported that this fact did not change her overall conclusion. Despite having authored this follow-up report that seemed to contradict her initial findings, Dr. Sinclair never testified about this report or her conclusions regarding the follow-up examination.

Returning to Skaggs' first habeas motion, Skaggs argued Lober should have cross-examined Dr. Sinclair regarding her inconsistent findings: upon examination at the emergency room, Dr. Sinclair observed most of B.S.'s hymen was absent except for anterior remnants; yet, her follow-up report readily acknowledged that B.S.'s hymen was intact. Skaggs asserted that if Lober had challenged Dr. Sinclair, Lober would have created reasonable doubt for the jury as to whether B.S.'s purported injuries were as notable as Dr. Sinclair described or whether they actually existed. Skaggs claimed that

5

Lober's failure to do so constituted deficient performance and that, in the absence of such deficient performance, the outcome of his trial would have been different.

The district court held an evidentiary hearing on this and other claims in Skaggs' motion. Judge Gunnar A. Sundby presided. Skaggs called Lober to testify. In addressing why he did not cross-examine Dr. Sinclair about her seemingly inconsistent findings, Lober testified he "thought long and hard before" making the decision not to challenge her. He testified it would have been futile to question her because he believed her findings were not inconsistent, and therefore, any questioning would have done more harm to Skaggs' defense than good. In support of his decision, Lober testified that he knew it was not unusual for the hymen to regenerate, that the medical literature supported Dr. Sinclair's findings in both examinations, that Dr. Sinclair was medically correct, and that if he—an individual with no medical training—had pressed the issue with her, her initial findings that B.S.'s examinations were consistent with sexual abuse would morph into findings that they were conclusive proof of sexual abuse in the jury's minds.

On August 29, 2012, the district court issued a memorandum decision denying Skaggs' first K.S.A. 60-1507 motion. As to Lober's alleged ineffectiveness for failing to cross-examine Dr. Sinclair, the court found Lober's testimony on the matter to be persuasive. It stated that Lober "carefully considered and chose not to question her significantly about the issue and the perceived inconsistency." The court found Lober's decision to be a reasonable trial strategy and denied Skaggs relief because he failed to establish how Lober was ineffective as to this point.

Skaggs appealed the decision, alleging only five ineffective assistance of counsel claims. See *Skaggs v. State*, No. 108,644, 2014 WL 1193324 (Kan. App. 2014) (unpublished opinion) (*Skaggs II*). On the issue of ineffective assistance of counsel regarding Lober's failure to challenge Dr. Sinclair's findings, a panel of this court found the district court did not err in concluding that Lober's approach constituted reasonable

6

trial strategy. 2014 WL 1193324, at *10. Skaggs petitioned for review, but the Kansas Supreme Court declined to review the matter.

Following denial of his first habeas motion, Skaggs wrote a letter to Judge Sundby. This letter is significant because it is the first time Skaggs alleged that he was unaware of the colposcopic photographs taken at B.S.'s follow-up examination. Skaggs alleged that the State withheld this potentially exculpatory evidence. He advised Judge Sundby that he had hired new counsel, Dennis Owens, and that Owens contacted the prosecutor's office several times to locate the photographs but had not been successful. Skaggs also advised Judge Sundby that he hired a medical expert to review the evidence presented at both his trial and at his first habeas proceeding. But the expert informed Skaggs that the colposcopic photographs were needed before the expert opinion could be finalized. Skaggs emphasized that the photographs were "potentially exculpatory evidence," they were never disclosed to the defense before trial, and they were never introduced at his trial. He asked the judge to assist him in obtaining the photographs. On January 26, 2016, Judge Sundby replied, stating that he reviewed the letter but the court did not have jurisdiction to consider Skaggs' request because there was no pending case before the court and, even if there was, the court did not possess the pictures.

On March 21, 2017, Skaggs filed a second pro se motion under K.S.A. 60-1507. This motion is the subject of the current appeal. Relevant here, Skaggs claimed: (1) new evidence had been discovered establishing a colorable claim of actual innocence (the colposcopic photographs from B.S.'s follow-up examination and Dr. Sinclair's findings regarding the follow-up examination); (2) the State failed to provide these allegedly exculpatory photographs to the defense before trial; and (3) Lober was ineffective for failing to obtain and introduce the photographs at trial and for failing to hire a medical expert to contradict Dr. Sinclair's findings.

In anticipation of filing this second K.S.A. 60-1507 motion, Skaggs hired medical expert Dr. Thomas Young to review, among other things, Dr. Sinclair's reports and testimony, the police reports, and B.S.'s statements and interviews. Dr. Young requested the photographs from B.S.'s follow-up examination, but it appears they were never provided. Nevertheless, Dr. Young made preliminary written findings in the form of an affidavit based on his review of the evidence that was provided. This report and affidavit were attached to Skaggs' memorandum in support of his motion for relief under K.S.A. 60-1507. In his affidavit, Dr. Young found to be "absurd" Dr. Sinclair's assertion that a hymen can regenerate. Specifically, he stated:

> "After three months of sexual activity of the nature described by B.S., she would have no hymen left—not even one with 'notching.' A hymen will not grow back after repeatedly being rubbed off. Given Dr. Sinclair's statement, that B.S.'s findings somehow 'evolved' and 'normalized,' are tantamount to Dr. Sinclair claiming she saw water flow uphill. A prepubertal child having any variety of hymen is consistent with no sexual activity— certainly not the kind of sexual activity described by B.S."

Dr. Young went on to conclude that the evidence from the two anogenital examinations falsified B.S.'s account of sexual abuse by Skaggs.

Skaggs relied on the expert opinion set forth in Dr. Young's affidavit to argue that the photographic evidence was critical exculpatory evidence. Skaggs asserted that if the photographic evidence had been provided to the defense and presented at trial, he would have been acquitted. Skaggs further claimed that if Lober had consulted a medical expert to discredit Dr. Sinclair's findings, he also would have been acquitted. Finally, although acknowledging his motion was both untimely and successive, Skaggs claimed the newly discovered evidence established a colorable claim of actual innocence that clears the procedural hurdles of manifest injustice and exceptional circumstances to permit the district court to address the underlying merits of his motion.

On December 14, 2017, the district court appointed Kevin Reardon to represent Skaggs in the second habeas case. The court held a status conference with the attorneys on March 15, 2018. At the conference, Reardon advised the court that he wanted to schedule a hearing on a motion he had drafted (but not yet filed) requesting the court issue an order for Children's Mercy Hospital to produce all of B.S.'s medical records, including the colposcopic photographs. The court scheduled a hearing on the matter for April 12, 2018, which was then continued to May 10, 2018.

At the May 10, 2018 hearing, Reardon called only Skaggs and Skaggs' mother, Susan Supplee, to testify. Skaggs testified that Owens, his counsel in a federal habeas case he filed, previously consulted a pediatric nurse in Chicago to review some of the medical evidence in his case. This happened after Skaggs' first state habeas proceeding. In consulting with this nurse, Owens learned that there were photographs of B.S.'s anogenital region from her follow-up examination and that they still were available at the hospital. Skaggs explained that this was the first time he had heard about the pictures. Skaggs testified that he wanted to obtain these pictures and have Dr. Young review them in this case. Skaggs noted that neither he nor Lober ever received these photographs as a part of discovery and that Lober never "bother[ed] to learn" they existed. Skaggs also said that there was no testimony about the results of B.S.'s follow-up examination presented at trial. Supplee did not provide any additional relevant testimony aside from stating that she confirmed with the hospital that the colposcopic photographs still existed and that Lober did not introduce these medical photos or Dr. Sinclair's follow-up report at her son's trial.

In closing, Reardon argued that Skaggs was entitled to the photographic evidence, regardless of whether it was purposely withheld or just negligently did not get disclosed. Reardon stated that if the evidence was exculpatory, then it would go directly to Skaggs' guilt or innocence, and at the very least, Skaggs should be allowed to have a medical

9

expert review the evidence. The court took the matter under advisement and stated it would issue a written ruling.

On June 11, 2018, Judge Sundby issued his memorandum decision denying Skaggs' second K.S.A. 60-1507 motion in its entirety. First, the court found the motion was successive because the medical records at issue were known to the defense at the time of Skaggs' trial and at the time of his first habeas proceeding. Judge Sundby concluded: "The fact that a medical opinion has been recently acquired by Mr. Skaggs regarding facts know[n] to movant for 10+ years, is not an exceptional circumstance." He further found that Skaggs failed to establish the requisite manifest injustice to extend the one-year filing deadline. Specifically, the court held Skaggs failed to establish a colorable claim of actual innocence—which would be considered in the manifest injustice analysis—because Dr. Sinclair's findings were not necessarily inconsistent and because Lober knew about Dr. Sinclair's follow-up report and the photographs.

Skaggs filed a pro se motion to reconsider on June 28, 2018. Reardon later refiled Skaggs' motion on December 19, 2018, and a supporting memorandum on January 18, 2019. In the motion, Skaggs largely rehashed the arguments in his original K.S.A. 60-1507 motion. The only new information he added concerned the Kansas Supreme Court's decision in *Beauclair v. State*, 308 Kan. 284, 419 P.3d 1180 (2018), which Skaggs argued was relevant to the issues he asserted in his second habeas motion. Skaggs requested an evidentiary hearing to argue his actual innocence claim.

On December 20, 2018, Judge Michael Gibbens held a nonevidentiary hearing to consider the arguments of counsel on Skaggs' motion to reconsider. At the hearing, Reardon admitted that Lober knew about the results of the follow-up examination before trial but stated that Lober failed to elicit any testimony about those results at trial. As such, the jury never heard or saw any evidence about the results of B.S.'s follow-up examination. Judge Gibbens indicated that if there was any contest over the facts, he

10

would "probably want to hear testimony . . . from Mr. Lober." In response to Judge Gibbens' comment, the State argued that the court previously denied Skaggs' claim of ineffective assistance of counsel on this issue in the first K.S.A. 60-1507 proceeding. The State explained that Lober testified at the first K.S.A. 60-1507 hearing that he intentionally did not bring up the evidence at trial based on reasonable trial strategy. The State further argued that because the evidence was known to Lober, Skaggs' second habeas motion was successive and there was no new information to support a colorable claim of actual innocence.

The district court remarked that although the State made a compelling argument in asserting the issues had already been litigated, there appeared to be a subtle difference in the argument:  the first habeas motion alleged Lober was ineffective for failing to cross-examine Dr. Sinclair, but the argument in the second habeas motion was that Lober was ineffective for essentially relying on erroneous medical evidence—i.e., a hymen cannot regenerate—to develop an invalid trial strategy. The district court also noted that the science concerning hymenal regeneration had not changed since 2008. At this point, the State agreed with Judge Gibbens' assessment that the hymen cannot regrow. Judge Gibbens then explained he would take the matter under advisement to determine if an evidentiary hearing would be necessary.

On February 25, 2019, Judge Gibbens issued a memorandum decision denying Skaggs' motion to reconsider the district court's previous order denying his K.S.A. 60-1507 motion. He first found that Skaggs' motion was successive because the purported newly discovered evidence could have been produced at trial if Lober had exercised reasonable diligence. Judge Gibbens also rejected Skaggs' *Brady* claim as successive because it could have been raised in Skaggs' previous habeas motion. Judge Gibbens finally found Skaggs failed to establish a colorable claim of actual innocence upon which the court could find manifest injustice because Skaggs did not show that it was more

likely than not that no reasonable juror would have convicted him in light of the alleged new evidence.

Skaggs claims the district court erred in denying his habeas motion as untimely and successive without conducting an evidentiary hearing first to determine whether he could establish the manifest injustice and exceptional circumstances necessary to overcome these procedural hurdles.

In determining how to proceed after a habeas motion is filed, a district court has three options. First, it can review the case file on its own. If the court concludes from that review that the case records conclusively show the prisoner is not entitled to any relief, the court may dismiss the motion without a hearing. Second, the court may decide based on its initial review that there is some potentially valid issue that it would like to have the parties address. In that case, the court may appoint counsel and hold a preliminary hearing. Third, if the court decides based on its review (or after a preliminary hearing) that there is a potentially meritorious issue on which evidence needs to be heard, the court must set the case for an evidentiary hearing. *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018). In deciding whether an evidentiary hearing must be held, the court generally must accept the factual allegations set out in the motion as true. See *Hogue v. Bruce*, 279 Kan. 848, Syl. ¶ 1, 113 P.3d 234 (2005). But the factual allegations must be specific, not mere conclusions. *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018).

Here, the district court chose the second option and held a preliminary hearing. The court took the matter under advisement and later ruled Skaggs was procedurally barred from having the underlying merits of his motion considered because the motion was both untimely filed and successive. Skaggs challenges this ruling, arguing new evidence that was not presented at this trial along with the detailed affidavit he attached

to his motion—both of which are to be accepted as true at this preliminary stage—present a potentially meritorious issue sufficient to trigger the need for an evidentiary hearing on the underlying merits of his claim.

When reviewing the district court's decision after the district court conducts a preliminary hearing, an appellate court applies a findings of fact and conclusions of law standard of review to determine whether the findings are supported by substantial competent evidence and whether those findings are sufficient to support its conclusions of law. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007).

1. *Manifest injustice*

A prisoner who files a K.S.A. 60-1507 motion must do so within one year after the appeal is final. K.S.A. 2019 Supp. 60-1507(f)(1). The court issued the mandate in Skaggs' direct appeal on September 9, 2010. Skaggs filed this second K.S.A. 60-1507 motion in 2017. He concedes he filed this motion outside the one-year time limit.

A district court may extend the one-year time limitation only to prevent manifest injustice. K.S.A. 2019 Supp. 60-1507(f)(2). The burden is on the prisoner to establish manifest injustice by a preponderance of the evidence. See *White*, 308 Kan. at 496. Courts broadly have described manifest injustice as something "'obviously unfair' or 'shocking to the conscience.'" *State v. Holt*, 298 Kan. 469, 480, 313 P.3d 826 (2013). But by statute, the court's manifest injustice analysis is limited to determining (1) "why the prisoner failed to file the motion within the one-year time limitation" and (2) "whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2019 Supp. 60-1507(f)(2). Skaggs contends that he satisfies both components. We address each of his contentions in turn.

a. *Reasons for untimely filing*

For the first time on appeal, Skaggs argues that there are two reasons to justify why he failed to timely file the claims in this second K.S.A. 60-1507 motion and that both support a finding of manifest injustice. The first reason, he explains, is that Kurz, the attorney who represented him in his first habeas motion, was constitutionally deficient for failing to raise the current habeas claims in his first habeas motion, which was timely filed. The second reason he offers for his late filing is that the State failed to correct false medical information in the first K.S.A. 60-1507 proceeding.

i. *Ineffective assistance of previous K.S.A. 60-1507 counsel*

Skaggs acknowledges there is no constitutional right to effective assistance of counsel in K.S.A. 60-1507 proceedings. See *Robertson v. State*, 288 Kan. 217, 228, 201 P.3d 691 (2009); *Brown v. State*, 278 Kan. 481, 483, 101 P.3d 1201 (2004). But there is a conditional statutory right to the effective assistance of counsel in a K.S.A. 60-1507 proceeding. This statutory right applies regardless of whether counsel was appointed or retained. See *McIntyre v. State*, 54 Kan. App. 2d 632, 638-43, 403 P.3d 1231 (2017) (citing K.S.A. 22-4506[b] and [c]). Once this statutory right attaches, a K.S.A. 60-1507 movant is entitled to effective assistance of counsel. *Robertson*, 288 Kan. at 228; *Brown*, 278 Kan. at 483-84.

To prevail on an ineffective assistance of K.S.A. 60-1507 counsel claim, the movant must establish (1) counsel's performance was deficient and (2) the movant suffered legal prejudice as a result of that performance. *Robertson*, 288 Kan. at 228-32; *Alford v. State*, 42 Kan. App. 2d 392, 398, 212 P.3d 250 (2009). Skaggs argues Kurz was ineffective for (1) failing to obtain the photographs from B.S.'s follow-up examination and (2) failing to hire an expert to testify at the K.S.A. 60-1507 hearing that it is medically impossible for a hymen to regrow and then to use that information to impeach

14

Lober's testimony that his review of the medical literature supported his conclusion that a hymen can regrow. Skaggs maintains impeaching Lober in this manner at the first habeas proceeding easily would have shown that Lober's "strategy"—purportedly to avoid challenging Dr. Sinclair's testimony that a hymen can regrow—was not a reasonable strategy and in fact amounted to ineffective assistance of trial counsel. Skaggs asks this court to find Kurz' constitutionally deficient performance establishes the manifest injustice necessary to overcome the one-year time limitation.

Generally, an appellate court will not consider an allegation of ineffective assistance of counsel raised for the first time on appeal. *Alford*, 42 Kan. App. 2d at 394. Kansas appellate courts previously have disposed of these claims in one of three ways. First, the appellate court can adhere to the general rule, decline to address the issue, and leave the movant to pursue relief through a timely subsequent K.S.A. 60-1507 motion. See, e.g., *State v. Cox*, No. 104,292, 2011 WL 6382755, at *2-4 (Kan. App. 2011) (unpublished opinion). Second, if the quality of counsel's assistance can be determined from the record on appeal, the appellate court may address the issue without remand to the district court. See, e.g., *Robertson*, 288 Kan. 217, Syl. ¶ 6. Third, if the quality of counsel's assistance cannot be determined from the record on appeal, the appellate court may remand to the district court for further proceedings pursuant to *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). See, e.g., *State v. Allen*, No. 101,367, 2010 WL 3636269, at *3 (Kan. App. 2010) (unpublished opinion).

Before an appellate court can utilize this third option, our Kansas Supreme Court has explained that the appellant must first show at least some prior investigation into the claimed ineffectiveness. See *State v. Levy*, 292 Kan. 379, 389, 253 P.3d 341 (2011). The *Levy* court cautioned:

"In *Van Cleave*, we set guidelines for an appellate court to follow in exercising its discretion when deciding whether to remand a case for an evidentiary hearing. In that

15

case, we noted an appellant's counsel must do more than simply read the cold record of the proceedings before the district court and then argue that he or she would have handled the case differently. We held that counsel must attempt to determine the circumstances under which trial counsel did—or did not—proceed as the appellate counsel believes preferable and conduct at least some investigation into the claimed ineffectiveness. We then noted: 'Except in the most unusual cases, [for an appellate counsel] to assert a claim of ineffective assistance of counsel without an independent inquiry and investigation apart from reading the record is questionable to say the least.' [Citations omitted.]" 292 Kan. at 389.

Based on our review of the motion, files, records, and statements of counsel at oral argument, we find Skaggs' current habeas counsel has conducted an investigation to determine why Kurz did not attempt to impeach Lober about the medical impossibility of hymen regeneration or cross-examine Lober about the source of the medical literature upon which he relied in deciding not to challenge Dr. Sinclair's opinion. As part of this investigation, appellate counsel consulted with a medical expert, whose report is attached to the motion here and which begs the question of why Kurz did not similarly hire a medical expert to impeach Lober's testimony. While the record and Skaggs' brief reflect that habeas counsel conducted some investigation into Kurz' alleged ineffectiveness, both are unclear as to why Kurz chose to disregard this evidence in the first habeas action. In other words, there is no indication whether Kurz' decision was intentional, strategic, or inadvertent error. Therefore, we find it appropriate to remand the matter for a *Van Cleave* evidentiary hearing so the district court can hear testimony and review evidence about Kurz' representation of Skaggs in the first K.S.A. 60-1507 motion for the limited purposes of deciding whether Skaggs has established manifest injustice for failing to timely file the claims in this second K.S.A. 60-1507 motion.

ii. *State's failure to correct false information*

The second reason Skaggs advances to justify why he failed to timely file his second K.S.A. 60-1507 motion is that the State knew or should have known during the first K.S.A. 60-1507 proceeding that Lober's "tactical" reason for not cross-examining Dr. Sinclair was incorrect. Specifically, the State knew or should have known that hymen regeneration was false medical information, and it should not have argued in favor of denying Skaggs relief. In further support of this allegation, Skaggs notes that—contrary to its assertion at trial and in the first habeas proceedings—the State substantively agreed during these proceedings that a hymen cannot regrow.

Even if this could be true, we fail to see how Skaggs' allegations regarding what the State should have known at trial or what the State presented as argument during the first or second habeas proceeding justifies Skaggs' failure to timely file the claims set forth in the current K.S.A. 60-1507 motion. As such, Skaggs' allegation that the State failed to correct false information is insufficient to establish manifest injustice.

b. *Actual innocence*

In deciding whether a prisoner has established the required manifest injustice to overcome an untimely motion, K.S.A. 60-1507 permits the court to determine "whether the prisoner makes a colorable claim of actual innocence." K.S.A. 2019 Supp. 60-1507(f)(2)(A). Skaggs argues that under two United States Supreme Court cases—*Schlup*, 513 U.S. 298, and *Carrier*, 477 U.S. 478—he has established a colorable claim of actual innocence to provide a "gateway" around the procedural hurdle of untimeliness that would otherwise apply.

Our consideration of Skaggs' argument is made easier by our Kansas Supreme Court's recent decision in *Beauclair*. See 308 Kan. 284. In *Beauclair*, our Supreme Court

17

expressly identified the two types of actual innocence claims that exist in Kansas habeas law. 308 Kan. at 295-99. First, there are the claims that fall under *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). Habeas claims pursuant to *Herrera* are ones in which a movant asserts a substantive claim of actual innocence—e.g., arguing that newly discovered evidence establishes a movant is actually innocent and requires a new trial. *Beauclair*, 308 Kan. at 295-99 (citing *Neer v. State*, No. 111,230, 2015 WL 1310815 [Kan. App. 2015] [unpublished opinion]). The most familiar *Herrera* claims are those in which DNA testing leads to exoneration of the applicant.

Second, there are the claims that fall under *Schlup*, 513 U.S. 298, and *Carrier*, 477 U.S. 478. *Schlup* claims are procedural habeas claims that provide a "'gateway through which a habeas petitioner must pass to have his [or her] otherwise barred constitutional claim considered on the merits.'" *Beauclair*, 308 Kan. 298-99 (quoting *Schlup*, 513 U.S. at 315). The claim of actual innocence is not itself a constitutional claim, but instead it provides the movant with an opportunity to clear the procedural hurdles of untimeliness and successiveness that otherwise prevent the court from considering the underlying habeas claim on the merits. *Beauclair*, 308 Kan. at 297-99 (citing *Schlup*, 513 U.S. at 314-15). Therefore, a movant may succeed on a *Schlup* claim only if the movant's claims for habeas relief are procedurally barred.

The underlying habeas motion filed here asserts claims of ineffective assistance of trial and appellate counsel as well as a *Brady* violation. Skaggs acknowledges his motion is both untimely and successive. But as in *Beauclair*, Skaggs asserts his claim of actual innocence as a gateway to defeat these procedural bars so the court can consider the merits of his underlying motion. Given this procedural posture, Skaggs' assertion of innocence is a *Schlup* claim. See *Schlup*, 513 U.S. at 315.

To satisfy the actual innocence component of the manifest injustice standard, the Kansas habeas statute requires Skaggs "to show it is more likely than not that no

18

reasonable juror would have convicted [him] in light of new evidence." K.S.A. 2019 Supp. 60-1507(f)(2)(A). As our Supreme Court pointed out in its recent *Beauclair* opinion, that statutory standard "mirrors" the federal caselaw standard Skaggs has cited from the United States Supreme Court's opinion in *Carrier*. See *Beauclair*, 308 Kan. at 301. Under the *Carrier* standard, an inmate seeking habeas relief is entitled to consideration of the merits of the motion if the inmate's claim of actual innocence establishes it is more likely than not that no reasonable juror would have convicted in light of new evidence. And because the question that jurors must answer in a criminal trial is whether a defendant is guilty beyond a reasonable doubt, the inmate's "burden at the gateway stage is merely to demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'" *Beauclair*, 308 Kan. at 301 (quoting *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 [2006] [discussing the *Carrier* standard]). In *Carrier*, the Court stated: "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." 477 U.S. at 496. *Schlup*, the other United States Supreme Court case Skaggs cited, relied upon the *Carrier* standard. After noting the similarity between the language of our statute and the federal standard, our Supreme Court "adopt[ed] the *Carrier* standard" when considering an actual innocence claim as a gateway around the procedural bar of the one-year time limit in K.S.A. 2019 Supp. 60-1507(f). *Beauclair*, 308 Kan. at 301.

Applying the *Schlup* and *Carrier* standards here means that Skaggs would be entitled to an evidentiary hearing on his gateway actual innocence claim if he has presented new evidence that, if true, would show it is more likely than not that no reasonable juror would have convicted him beyond a reasonable doubt given the new evidence. This requires the district court to evaluate whether the new evidence presents specific facts that are not contradicted by the record and then, if so, to evaluate whether the new evidence, considered in light of all the evidence at trial, would support a

19

conclusion that Skaggs has met the actual innocence test—the caveat being that the district court must assume the new evidence is true when determining whether to conduct an evidentiary hearing. See *Hogue*, 279 Kan. 848, Syl. ¶ 1 (in deciding whether an evidentiary hearing must be held, the court generally must accept the factual allegations set out in the motion as true).

Application of this standard is a highly factual inquiry, even at the stage of determining whether the petitioner should be granted an evidentiary hearing on his actual innocence claim. See *Schlup*, 513 U.S. at 301-13 (setting forth, in great detail, the facts supporting the petitioner's requested relief). The district court "must make its determination concerning the petitioner's innocence 'in light of all the evidence.'" 513 U.S. at 328. It must review both the reliability of the new evidence and its materiality to the conviction being challenged, which in turn requires an examination of the quality of the evidence that produced the original conviction. See *House*, 547 U.S. at 538 ("*Schlup* makes plain that the habeas court must consider "'all the evidence,"' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.' Based on this total record, the court must make a 'probabilistic determination about what reasonable, properly instructed jurors would do.' [Citations omitted.]"); *Schlup*, 513 U.S. at 331-32 ("[T]he District Court must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial."). But the "court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." *House*, 547 U.S. at 538. Since the jury did not hear the new evidence, the district court should "assess how reasonable jurors would react to the overall, newly supplemented record." 547 U.S. at 538. And unlike summary judgment proceedings, the district court may make some credibility determinations based on the new evidence in determining whether to conduct an evidentiary hearing. See *Schlup*, 513 U.S. at 332 ("[T]he court may consider how . . .

20

the likely credibility of the affiants bear on the probable reliability of that evidence."). Finally, it bears emphasizing that

> "the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538.

With these principles in mind, we review the district court's decision to deny Skaggs' request for an evidentiary hearing on his *Schlup* gateway claim of actual innocence.

The district court decided an evidentiary hearing was not required in this case because Skaggs' motion and the files and the records of the case conclusively showed that Skaggs was not entitled to relief. Specifically, the court held that the February 5 follow-up exam report, the February 5 examination photographs, and Dr. Young's affidavit were not "newly discovered" evidence that could support a claim of actual innocence because they all could have been produced at trial through the exercise of due diligence. In coming to this decision, the court relied on *Moncla v. State*, 285 Kan. 826, 839-40, 176 P.3d 954 (2008). In *Moncla*, the Supreme Court held that appellate courts must consider the following factors in deciding whether the district court was required to have held an evidentiary hearing before denying a defendant's motion for new trial based on newly discovered evidence: (1) whether the motion alleges facts that do not appear in the original record and which, if true, would entitle the defendant to relief; (2) whether the motion sufficiently identifies available witnesses whose testimony would support the allegedly new facts and demonstrate that the defendant should receive a new trial; and (3) whether the defendant's newly discovered evidence could have been produced at trial through reasonable diligence. 285 Kan. at 840.

21

Skaggs argues the district court made a critical legal error in denying an evidentiary hearing on the basis that he did not present "newly discovered evidence" as that term is described in *Moncla*, 285 Kan. at 839-40. Specifically, he argues the district court erred in finding that the new evidence he presented—the February 5 follow-up exam, the February 5 photographs, and Dr. Young's affidavit—was not "newly discovered" because it could have been produced at trial through the exercise of due diligence. In support of error, Skaggs asserts "new evidence" for purposes of the *Schlup/Carrier* actual innocence standard is not co-extensive with the "newly discovered evidence" standard articulated in *Moncla*. Instead, Skaggs maintains the *Moncla* consideration should be whether the defendant's newly discovered evidence *was presented at trial*, not whether it *could have been produced* through reasonable diligence.

Before addressing Skaggs' argument, we find it helpful to review the procedural posture in which the Supreme Court decided *Moncla*. In 1995, a jury convicted Moncla of first-degree murder in the killing of Diane Swinney, who died after sustaining 18 blows to the head with a hammer. An employee of Swinney's named Kevin Robertson discovered her body. After the conviction was affirmed on direct appeal, Moncla filed a motion for a new trial based on affidavits from Scott Staggs and Allen Richards, two inmates who would implicate Robertson in the murder for which Moncla was convicted. The district court held an evidentiary hearing, at which Staggs, Richards, Robertson, and Moncla testified. Staggs testified that, while they were in prison together, Robertson directly confessed that he and his brother killed Swinney. Richards testified that during a time when he and Robertson were in prison together, Robertson commented that the police had put the wrong man in jail for Swinney's murder. For his part, Robertson denied telling Staggs or Richards anything about the murder. The district court ultimately denied Moncla's motion for a new trial. The court found the testimony of Staggs and Richards was not credible and failed to explain the physical evidence presented at trial that supported Moncla's conviction. The court noted that the jury heard Moncla's testimony at trial regarding Robertson's alleged connection to the crime, that Robertson himself also

22

testified at the trial, and that Robertson had an alibi for the time window in which the crime was committed. The district court's decision was affirmed by the Kansas Supreme Court. See *Moncla*, 285 Kan. at 826; *State v. Moncla*, 273 Kan. 856, 46 P.3d 1162 (2002); *State v. Moncla*, 269 Kan. 61, 4 P.3d 618 (2000).

In 2003, Moncla filed a K.S.A. 60-1507 motion alleging he was entitled to a new trial based on newly discovered evidence. In the motion, Moncla claimed that four new witnesses would implicate Robertson in Swinney's murder. The district court summarily denied Moncla's motion without an evidentiary hearing. Our Supreme Court reversed, concluding that the district court abused its discretion in denying Moncla an evidentiary hearing. 285 Kan. at 841. In deciding that the district court should have conducted an evidentiary hearing on Moncla's newly discovered evidence claim before denying his request for a new trial, the court found (1) the motion alleged facts not in the original record which, if true, would entitle Moncla to relief; (2) the motion adequately identified witnesses to support the alleged facts; and (3) the newly discovered evidence could not have been produced at his trial through the exercise of reasonable diligence. 285 Kan. at 840. Regarding the third consideration, the Kansas Supreme Court found the proposed witness testimony could be characterized as newly discovered but only to the extent it related to events and statements made after Moncla's trial. Because there had been no evidentiary hearing to flesh out the testimony, the court stated it had "no idea whether the evidence they present truly can be characterized as 'newly discovered.' Our lack of information on these points is shared by the district judge who rejected these claims without a hearing." 285 Kan. at 840.

With this background, we are ready to address Skaggs' argument. Concisely stated, Skaggs claims he is entitled to an evidentiary hearing on the underlying merits of his habeas motion because he has tendered newly discovered evidence that was *not presented* at trial, which satisfies the gateway actual innocence component of the manifest injustice standard in order to overcome the one-year time limitation. In making this claim,

23

however, Skaggs assumes he only is required on a gateway procedural claim of actual innocence to show that the new evidence offered was not produced at trial, as opposed to what is required under the *Moncla* standard, that the new evidence *could not have been produced* at trial through reasonable diligence. So before addressing whether Skaggs is entitled to an evidentiary hearing on the underlying merits of his motion, we first must decide whether submitting new evidence that was not presented at trial is sufficient to establish a gateway procedural claim of actual innocence to overcome the one-year time limitation.

Relevant to our analysis, we note the issue in *Moncla* was whether the new evidence of actual innocence presented by the movant was sufficient to get him an evidentiary hearing to present that evidence for purposes of getting a new trial. Here, however, we are faced with a prefatory issue: whether the new evidence of actual innocence presented by Skaggs is sufficient to show manifest injustice for purposes of overcoming the procedural one-year time limitation applicable to his motion. This distinction is significant because the "reasonable diligence" consideration set forth by the *Moncla* court was implicitly grounded in K.S.A. 22-3501, which is a Kansas statute that permits a trial court to grant a new trial based on newly discovered evidence "in the interest of justice." 285 Kan. at 839-40 (citing *Taylor v. State*, 251 Kan. 272, 288, 834 P.2d 1325 [1992], *disapproved of on other grounds by State v. Orr*, 262 Kan. 312, 940 P.2d 42 [1997]). In *Taylor*, the issue was whether the habeas court erred in deciding a new trial was not warranted based on the entomology evidence the movant alleged to be newly discovered. The *Taylor* court began its analysis with K.S.A. 22-3501 and explained that

> "Kansas courts have developed a two-pronged test for determining when new trials are required under K.S.A. 22-3501:
>
> > "1. The evidence must be new; the defendant must show the evidence could not with reasonable diligence have been produced at trial.

24

"2. The evidence must be of such materiality it would likely produce a different result at a new trial." *Taylor*, 251 Kan. at 288 (citing *State v. Neal*, 243 Kan. 756, 760, 763 P.2d 621 [1988]).

So the first part of the *Taylor* test, upon which the *Moncla* court relied to require consideration of whether the new evidence could have been produced at trial with reasonable diligence consideration, is rooted in the Kansas Supreme Court's interpretation of K.S.A. 22-3501. But unlike *Moncla* and *Taylor*, the issue here is not whether an evidentiary hearing is required on a substantive actual innocence claim seeking a new trial under K.S.A. 22-3501. Instead, Skaggs presents a procedural actual innocence claim under K.S.A. 60-1507 to provide him a gateway through which he can pass to have his otherwise barred constitutional claim considered on the merits.

Given the distinction between the substantive actual innocence claim in *Moncla* and the procedural actual innocence claim here, we turn to Skaggs' second argument about the third *Moncla* consideration: that the standard should be whether the defendant's new evidence was *presented* at trial, not whether it *could have been produced* at trial through reasonable diligence. In support of his argument, Skaggs directs us to the analysis in *Reeves v. Fayette SCI*, 897 F.3d 154 (3d Cir. 2018), *cert. denied* 139 S. Ct. 2713 (2019). Reeves was convicted after a jury trial of robbery and second-degree murder. Reeves later filed an untimely habeas petition that provided new evidence concerning alternative suspects. Acknowledging that his petition was untimely, Reeves asserted ineffective assistance of counsel to excuse his petition's untimeliness under the actual innocence exception to procedural default recognized in *Schlup*. The magistrate court declined to hold an evidentiary hearing because the new evidence concerning alternative suspects was evidence available to him and his trial counsel at the time of trial.

On appeal, the *Reeves* court acknowledged a split in the federal circuits on whether new evidence presented to support a *Schlup* claim of actual innocence must be

25

"newly discovered" evidence that was unavailable at trial or "newly presented" evidence that was not introduced at trial. The court first cited to a decision from the Eighth Circuit Court of Appeals which held that "'evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence.'" 897 F.3d at 161 (citing *Amrine v. Bowersox*, 238 F.3d 1023, 1028 [8th Cir. 2001]). But the court went on to note that the Courts of Appeals for the First, Second, Seventh, Sixth, and Ninth Circuits held that "actual innocence can be shown by relying on newly presented— not just newly discovered—evidence of innocence." 897 F.3d at 161-62. The court found the decision reached by the majority of circuits made sense:

"Those courts that define 'new evidence' to include evidence not presented at trial find support in *Schlup*. In announcing the standard for a gateway actual innocence claim, the *Schlup* Court stated that a federal habeas court, after being presented with new, reliable exculpatory evidence, must then weigh 'all of the evidence, including . . . evidence tenably claimed to have been wrongly excluded or to have become available only after the trial' to determine whether no reasonable juror would have found the petitioner guilty. The reference to 'wrongly excluded' evidence suggests that the assessment of an actual innocence claim is not intended to be strictly limited to newly discovered evidence—at least not in the context of reaching an ineffective assistance of counsel claim based on counsel's failure to investigate or present at trial such exculpatory evidence, as was the case in *Schlup*. In addition, in articulating the new, reliable evidence requirement, the Supreme Court stated that the petitioner must 'support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.' Moreover, the Court used the phrase 'newly presented evidence' in the context of discussing witness credibility assessments that may occur as part of the actual innocence gateway analysis. When considered in the context of the Court's other statement about weighing all evidence—including not only evidence unavailable at trial but also evidence excluded at trial—these references to evidence not presented at trial further suggest that new evidence, solely where counsel was ineffective for failing to discover or use such evidence, requires only that the evidence not be presented to the factfinder at trial. Indeed, among the new evidence presented by the petitioner in *Schlup*

26

was an affidavit containing witness statements that were available at trial, but the Supreme Court did not discuss the significance of the evidence's availability nor reject the evidence outright, which presumably it would have done if the actual innocence gateway was strictly limited to newly discovered evidence. *Schlup* therefore strongly suggests that new evidence in the actual innocence context refers to newly presented exculpatory evidence. Indeed, in a subsequent decision, the Supreme Court cited *Schlup* for this very proposition, stating that '[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial.' [Citations omitted.]" *Reeves*, 897 F.3d at 162-63.

Although citing favorably to the holdings in the majority of circuits, the *Reeves* court ultimately adopted a modified approach by holding that new evidence generally must be newly discovered but recognizing that a narrow exception to procedural default based on actual innocence should be applied when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence. Under these limited circumstances, the court held that newly presented evidence constitutes new evidence for purposes of the *Schlup* actual innocence gateway. 897 F.3d at 164.

We find the modified approach in *Reeves* to be sound and adopt it under the circumstances presented here, where the underlying constitutional violation claimed is ineffective assistance of counsel premised on counsel's failure to present new evidence. To require that the new evidence be unknown to the defense at the time of trial would operate as a roadblock to the actual innocence gateway. 897 F.3d at 164 (citing *Gomez v. Jaimet*, 350 F.3d 673, 679-80 [7th Cir. 2003]). To overcome this roadblock, we hold that when a movant asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the *Schlup* procedural actual innocence standard. This is a narrow holding based on the facts presented in this case on appeal. Our decision should not be read as a sweeping

27

pronouncement that newly presented exculpatory evidence must always be considered in an actual innocence gateway context. Because it is not necessary to decide the issue presented on appeal in this case, we expressly do not reach the issue of whether newly presented evidence constitutes new evidence for purposes of the *Schlup* actual innocence gateway in cases other than those, like here, where the underlying constitutional violation claimed is ineffective assistance of counsel premised on counsel's failure to present new evidence.

The newly presented evidence submitted by Skaggs here includes the follow-up exam report, the follow-up exam photographs, and Dr. Young's affidavit. As asserted in Skaggs' K.S.A. 60-1507 motion below, the follow-up exam of B.S. performed on February 5 established she had normal genitalia and an intact hymen. This information directly contradicted Dr. Sinclair's earlier SAFE report findings of January 22, which concluded that B.S.'s hymen was completely absent, and the absence of her hymen constituted a physical finding consistent with sexual assault. In his affidavit, Dr. Young stated that it is medically impossible for the hymen to regrow, especially given the repeated nature of the sexual assaults over a period of three months, as alleged by B.S. Dr. Young's affidavit establishes that the findings of January 22 and those of February 5 cannot both be true.

Assuming the specific facts alleged in Skaggs' K.S.A. 60-1507 motion along with the factual substance of Dr. Young's affidavit attached to the motion are true, we conclude it may be possible for Skaggs to satisfy the actual innocence component of the manifest injustice standard. Because there was no evidentiary hearing to flesh out the newly presented testimony and review the newly presented evidence, we are not in a position to determine whether Skaggs has shown "it is more likely than not that no reasonable juror would have convicted [him] in light of new evidence." K.S.A. 2019 Supp. 60-1507(f)(2)(A). Accordingly, we remand to the district court for an evidentiary hearing at which the judge must hear the newly presented testimony and review the

28

newly presented evidence for purposes of making a decision on Skaggs' gateway claim of actual innocence. That claim will qualify as a "colorable claim of actual innocence" for purposes of establishing manifest injustice if the district court finds it "more likely than not that no reasonable juror would have convicted [him] in light of new evidence." K.S.A. 2019 Supp. 60-1507(f)(2)(A). If that threshold is reached, the one-year time limit of K.S.A. 2019 Supp. 60-1507(f) should be excused and the district judge should then address the merits of Skaggs' K.S.A. 60-1507 motion. See *Beauclair*, 308 Kan. at 303-04.

2. *Exceptional circumstances*

K.S.A. 2019 Supp. 60-1507(c) and Supreme Court Rule 183(d) (2020 Kan. S. Ct. R. 223) provide that a district court is not required to entertain successive motions on behalf of the same prisoner. This rule prohibiting successive motions, however, is subject to limited exceptions. *Thuko v. State*, 310 Kan. 74, 84, 444 P.3d 927 (2019). To avoid having a second or successive K.S.A. 60-1507 motion dismissed as an abuse of remedy, the movant must establish exceptional circumstances. "Exceptional circumstances" are defined as unusual events or intervening changes in the law that prevented the movant from raising the issues in the preceding K.S.A. 60-1507 motion. *Beauclair*, 308 Kan. at 304.

In *Beauclair*, the Kansas Supreme Court concluded that a colorable claim of actual innocence based on new evidence could serve as an "unusual event" sufficient to provide a gateway past this procedural hurdle. 308 Kan. at 304. And we already have found that Skaggs may be able to establish a colorable claim of actual innocence based on newly presented evidence. Thus, if Skaggs is successful on remand in showing a colorable claim under the *Schlup/Carrier* standard, he will meet not only the manifest injustice standard to excuse untimeliness but also the exceptional circumstances standard to excuse successiveness.

29

CONCLUSION

Skaggs has presented potentially meritorious claims of manifest injustice and extraordinary circumstances that may be sufficient to overcome the procedural hurdles that prevent the district court from deciding the merits of his underlying K.S.A. 60-1507 motion; therefore, he is entitled to an evidentiary hearing before the district court only on these procedural issues. See *White*, 308 Kan. at 504. Accordingly, we reverse the district court's decision to deny Skaggs' motion as untimely and successive and remand to the district court to hold

- a *Van Cleave* evidentiary hearing to determine whether Kurz provided ineffective assistance of counsel in the first K.S.A. 60-1507 proceedings and, if so, whether the ineffective nature of Kurz' assistance establishes the requisite manifest injustice for failing to timely file the claims in this second K.S.A. 60-1507 motion or establishes the extraordinary circumstances necessary to overcome the successive nature of the motion; and
- an evidentiary hearing on Skaggs' gateway procedural claim of actual innocence to determine whether the new evidence presented by Skaggs at that hearing establishes that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence he presents. If the district court determines that threshold is reached, the one-year time limit of K.S.A. 2019 Supp. 60-1507(f) and the prohibition on successive motions of K.S.A. 2019 Supp. 60-1507(c) should be excused and the district judge should then address the merits of Skaggs' K.S.A. 60-1507 motion.

Reversed and remanded with directions.