NOT DESIGNATED FOR PUBLICATION

No. 124,241

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DYRON KING,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER L. MYERS, judge. Opinion filed September 30, 2022. Affirmed.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for appellant.

*Kayla Roehler*, deputy district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., BRUNS and HURST, JJ.


PER CURIAM: Following a two-week jury trial, Dyron King and a codefendant were convicted of multiple charges arising out of a series of robberies. After his convictions were affirmed by the Kansas Supreme Court, King timely filed a pro se K.S.A. 60-1507 motion. Although the district court summarily denied six of King's claims, it appointed an attorney to represent King and held an evidentiary hearing on the two remaining claims. At the conclusion of the hearing, the district court denied the K.S.A. 60-1507 motion in its entirety.

1

On appeal, King does not challenge the district court's denial of the claims he asserted in his K.S.A. 60-1507 motion. Instead, he contends—for the first time—that his K.S.A. 60-1507 counsel was ineffective because he failed to amend the motion prior to the evidentiary hearing and asks that we remand this case to the district court pursuant to *State v. Van Cleave*, 239 Kan. 117, 716 P.2d 580 (1986). Based on our review of the record on appeal, we conclude that King has failed to demonstrate that he was prejudiced by the alleged deficient performance of counsel. Thus, we affirm.

FACTS

In 2016, King and a codefendant, Cecil Meggerson, were jointly tried on charges arising out of a series of violent robberies that occurred in metropolitan Kansas City. During the jury trial—which lasted two weeks—the State presented the testimony of 74 witnesses and more than 600 exhibits were admitted into evidence. Neither defendant presented evidence. The Kansas Supreme Court recited the underlying facts—as well as the evidence presented by the State at trial—at length. *State v. King*, 308 Kan. 16, 417 P.3d 1073 (2018). Consequently, we will briefly summarize the facts material to the issue presented on appeal in this section of our opinion and refer to additional facts as necessary in the analysis section.

During closing arguments, Meggerson's attorney suggested that the jury could convict King while acquitting his client. He emphasized that certain evidence was found at King's residence, and none was found at Meggerson's residence. He further emphasized that the evidence found at King's residence did not link Meggerson to the crimes. At the conclusion of his argument, Meggerson's attorney argued that "[t]he evidence is clear against Dyron" but "is circumstantial and lacking against Cecil Meggerson." King's trial counsel did not object to this argument, nor did she ask to have King's trial severed from Meggerson's before the jury returned its verdict.

2

After deliberation, the jury convicted King of attempted capital murder of a sheriff's deputy, three counts of aggravated robbery, two counts of aggravated battery, conspiracy to commit aggravated robbery, and two counts of criminal possession of a firearm. The jury acquitted King of one count of aggravated robbery and one count of criminal threat. The jury also convicted Meggerson of all charges except one count of aggravated robbery.

Subsequently, King filed a motion for new trial. In his motion, King argued that the closing argument made by Meggerson's attorney shifted his client's defense—without warning—from simply holding the State to its burden of proof to pointing the finger at King. King suggested that if Meggerson's attorney intended to make such an argument, he should have asked for separate trials. Ultimately, the district court denied King's motion for new trial, finding that the argument was not inflammatory and was made in response to the evidence presented by the State at trial.

After denying King's motion for new trial, the district court sentenced him to life imprisonment without possibility of parole for 25 years on the attempted capital murder conviction and consecutive sentences of 449 months' imprisonment on the remaining convictions. On direct appeal, the Kansas Supreme Court affirmed King's convictions. In addition, the court found that by waiting until after the jury returned its verdict to raise the issue, "King waived his ability to seek severance." *King*, 308 Kan. at 37.

King then timely filed a pro se motion for postconviction relief under K.S.A. 60-1507. In his motion, King asserted eight claims—none of which are material to the limited issue presented in this appeal. The district court summarily denied six of King's claims and set an evidentiary hearing on the two remaining claims. The district court also appointed an attorney to represent King at the evidentiary hearing.

3

At the K.S.A. 60-1507 hearing, trial counsel testified about her representation of King at trial. Although the severance issue was not raised as an issue in the K.S.A. 60-1507 motion, trial counsel testified that she believed King and Meggerson were aligned regarding their theory of defense, and she did not anticipate that Meggerson's attorney was going to "thr[o]w . . . King under the bus" during closing arguments. According to trial counsel, had she known that Meggerson's attorney would point the finger at her client, she would have asked for separate trials. But trial counsel did not offer an explanation regarding why she did not request severance after Meggerson's closing argument and before the jury returned a verdict.

After hearing the evidence and arguments of counsel at the K.S.A. 60-1507 hearing, the district court denied both remaining claims set forth in King's motion. In doing so, the district court found that trial counsel's performance was not deficient. Likewise, the district court determined that even if trial counsel's performance had been deficient, it did not result in prejudice to King because the evidence against him was overwhelming.

Thereafter, King timely filed a notice of appeal.

ANALYSIS

On appeal, King does not challenge the rulings made by the district court relating to his K.S.A. 60-1507 motion. Rather, the sole issue presented by King on appeal is whether we should remand this case for a hearing to determine whether his K.S.A. 60-1507 counsel was ineffective. Specifically, King argues—for the first time on appeal—that his K.S.A. 60-1507 counsel should have amended the motion prior to the K.S.A. 60-1507 hearing to assert that his trial counsel was ineffective for failing to request to sever his jury trial from Meggerson's jury trial. The extent of a movant's statutory right to effective assistance of counsel during a K.S.A. 60-1507 proceeding is a question of law

4

over which we have unlimited review. *Robertson v. State*, 288 Kan. 217, 227, 201 P.3d 691 (2009).

In *Van Cleave*, the Kansas Supreme Court held that "[w]hen appellate counsel in a criminal case desires to raise the issue of ineffective assistance of counsel and that issue has never been ruled upon by the trial court, defendant may seek a remand of the case to the trial court for an initial determination of the issue." 239 Kan. 117, Syl. ¶ 2. Nevertheless, where the quality of the assistance provided by an attorney representing the movant on a K.S.A. 60-1507 motion is determinable from the record on appeal, it is not necessary to remand the issue to the district court. *Robertson*, 288 Kan. at 228. Here, we find that the issue presented may be determined based on the record on appeal and, as a result, remand to the district court is unnecessary.

"To prevail on an ineffective assistance of K.S.A. 60-1507 counsel claim, the movant must establish (1) counsel's performance was deficient and (2) the movant suffered legal prejudice as a result of that performance." *Skaggs v. State*, 59 Kan. App. 2d 121, 132, 479 P.3d 499 (2020), *rev. denied* 313 Kan. 1042 (2021). This is the same two-prong test articulated in *Strickland v. Washington* under which courts analyze claims of ineffective assistance of trial counsel. 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). This test was adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985).

Moreover, in *Strickland*, the United States Supreme Court held:

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. *If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed*." (Emphasis added.) 466 U.S. at 697.

To establish prejudice, the movant must demonstrate a reasonable probability that without the alleged deficient performance of counsel, the outcome of the proceeding would have been different. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021) (quoting *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 [2012]). In determining whether King has established sufficient prejudice, we must consider the totality of the evidence presented by the State at trial. See *Bledsoe v. State*, 283 Kan. 81, 90-91, 150 P.3d 868 (2007).

Even if we assume solely for the purposes of argument that the representation provided by King's K.S.A. 60-1507 counsel—or by implication his trial counsel—was deficient, we find that he has failed to demonstrate a reasonable probability that the outcome of either the K.S.A. 60-1507 proceeding or his trial would have been different. This is because a review of the record reveals that the evidence presented by the State against King at trial was overwhelming. This evidence would have been the same regardless of whether King and Meggerson were tried jointly or separately.

As discussed above, the Kansas Supreme Court reviewed the facts in detail when it affirmed King's convictions on direct appeal. In finding that certain statements made by the prosecutor at trial were not prejudicial, our Supreme Court concluded that "there is no reasonable possibility the prosecutor's comments contributed to the verdict" based on "the length and complexity of the case, as well as the voluminous evidence presented to the jury." *King*, 308 Kan. at 36. Similarly, in reviewing the sufficiency of the evidence, our Supreme Court found that there was "vast amounts of circumstantial evidence presented in this case . . . [and] some of the most probative is the DNA evidence." 308 Kan. at 28.

Our review of the record on appeal confirms that the State presented a substantial amount of DNA evidence to the jury connecting King to the string of violent robberies. Significantly, the blood of the deputy who was shot during one of the robberies was

6

discovered on a revolver found in King's bed after he was arrested. The revolver was the same caliber as that used to shoot the deputy. Moreover, a firearms expert examined shell casings recovered from the robberies and was able to determine they were all fired from the same gun.

Likewise, King's DNA was found inside a pair of Nike shoes linked to each of the robbery scenes. Additionally, blood from a victim from one of the other robberies was found on the Nike shoes. Also, King's DNA was found inside batting gloves that—like the Nike shoes—appeared in each robbery.

In reviewing King's conspiracy conviction, our Supreme Court found that there was "strong circumstantial evidence of an agreement suggested by the mere fact of a coordinated string of robberies." 308 Kan. at 29. The State also presented evidence of a conspiracy through several text messages and phone calls. Furthermore, surveillance videos of each robbery were admitted into evidence and viewed by the jury.

Also, the State presented evidence of several incriminating statements about shooting the deputy that King made while he was being detained at the Wyandotte County Jail awaiting trial. A corrections officer testified that during a dispute over whether he could have access to a phone, King yelled over a jail intercom that he should get the phone whenever he wanted because he "'shot a policeman.'" According to the corrections officer, King repeated multiple times that he was just mad because King "'shot [his] boy.'" 308 Kan. at 26.

As noted by the Kansas Supreme Court, the evidence of King's guilt presented by the State at trial was strong, vast, and voluminous. This evidence would have been presented by the State regardless of whether King and Meggerson were tried together or separately. Although we recognize that it is possible that a movant may be able to establish prejudice even when the evidence is strong, we do not find this to be such a

case. Based on our review of the record, we are convinced from the totality of the evidence that King has failed to demonstrate a reasonable probability that the outcome of his trial would have been different but for the alleged deficient performance by either his trial counsel or his K.S.A. 60-1507 counsel. As a result, we conclude that King has failed to establish prejudice under the second prong of the *Strickland* test. Accordingly, we affirm the district court's denial of his K.S.A. 60-1507 motion.

Affirmed.