NOT DESIGNATED FOR PUBLICATION

No. 123,043

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ROGER LEE NICHOLS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; MICHAEL D. GIBBENS, judge. Opinion filed July 9, 2021. Reversed and remanded with directions.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Meredith D. Mazza*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL, J., and MCANANY, S.J.

PER CURIAM: Roger Lee Nichols is an inmate at the Ellsworth Correctional Facility. He moved for habeas corpus relief under K.S.A. 60-1507 after the district court denied relief on his first K.S.A. 60-1507 motion. In his second motion, Nichols contended that the attorney who represented him in his first K.S.A. 60-1507 motion was ineffective; that his convictions were the product of falsified, tainted, and unreliable evidence, as well as perjured testimony and prosecutorial error; and that he was actually innocent of the charges for which he was convicted. The district court summarily found that this second motion was successive and that Nichols had failed to establish exceptional circumstances to justify the court considering his claims on the merits.

1

We conclude that under the facts of this case and our Supreme Court's holding in *Beauclair v. State*, 308 Kan. 284, 419 P.3d 1180 (2018), the district court should have conducted an evidentiary hearing on Nichols' claim of actual innocence rather than summarily dismissing Nichols' motion as successive. Accordingly, we reverse and remand for further proceedings on Nichols' motion.

FACTUAL AND PROCEDURAL HISTORY

In 2010, Nichols was charged with rape, aggravated criminal sodomy, and two counts of aggravated indecent liberties with a child involving M.G. and T.H. At trial in May 2011, Nichols was convicted of aggravated criminal sodomy and two counts of aggravated indecent liberties with a child. He was sentenced to three hard 25 life sentences, two of which were ordered to run consecutively. A panel of this court subsequently affirmed Nichols' convictions and sentences. *State v. Nichols*, No. 106,974, 2012 WL 6217199 (Kan. App. 2012) (unpublished opinion). The following abstract of the Court of Appeals opinion on the substantive issue raised in Nichols' direct appeal may be helpful at this point.

It is important to note that the credibility of the sisters, T.H. and M.G., the victims in this case, was the central issue at trial. There was no physical evidence to support the allegations of abuse these children made. Helen Swan, who conducted forensic interviews of the children, was an important witness for the State.

T.H. was born in 1998; M.G. was born in 2001. The children's mother had dated Nichols from 2003 to 2008, but Nichols continued to have contact with the girls thereafter. In 2010, M.G. told their mother that Nichols had sexually abused them. M.G. testified that the abuse started when she was 7 or 8 years old and continued until she was 11 or 12 years old. T.H. also testified about being sexually abused. Nichols presented

2

testimony of several of his family members that the girls had admitted lying about the abuse. The girls denied making these admissions.

The girls' mother testified that M.G. had been in counseling for depression since early 2010 before mother was aware of the sexual abuse. Nichols moved for a mistrial because of a claimed *Brady* violation—the failure to disclose these counseling records. The State acknowledged that it was aware of M.G. receiving counselling but was unaware of the contents of the records. It did not obtain the records because it did not believe they were necessary. The district court denied a mistrial, and in his direct appeal Nichols claimed it was error to do so. In affirming the district court on this mistrial issue, the appellate court made the following observations about Nichols' trial counsel:

> "Nichols relies only on speculation to claim that the counseling records might show that M.G. was lying about the abuse.
>
> ". . . Here, Nichols hired an investigator who spoke to some of the State's witnesses. During the investigation, Nichols could have discovered that M.G. was in counseling and then he could have subpoenaed the records. Nichols could have obtained this information through reasonable diligence—the State certainly did not prevent Nichols from uncovering this evidence.
>
> . . . .
>
> ". . . Without knowing what information the counseling records contained, Nichols has no way to show that the records could have influenced the outcome of the trial.
>
> ". . . Hypothetically, M.G.'s counseling records could have bolstered Nichols' defense that M.G. and T.H. admitted to lying about the sexual abuse." *Nichols*, 2012 WL 6217199, at *3-4.

The Kansas Supreme Court denied Nichols' petition for review, and the mandate was issued.

3

Nichols filed a timely motion for relief under K.S.A. 60-1507, arguing that his trial counsel had provided him ineffective assistance. He claimed he was wrongfully convicted because of his counsel's ineffective performance at trial in not obtaining and using at trial medical and psychological records, DCF records of the girls' prior accusation of abuse, Facebook messages sent by one of the girls, Nichols' employment records, and not retaining an expert child psychologist. Nichols' K.S.A. 60-1507 counsel did not include any claims of prosecutorial error or claims related to the testimony of forensic interviewer Swan.

Following a two-day hearing before the same judge who presided over Nichols' trial, the district court denied relief, adopting the arguments raised in the State's brief.

On appeal a panel of this court affirmed the district court's action. *Nichols v. State*, No. 116,116, 2017 WL 3327085 (Kan. App. 2017) (unpublished opinion). Our Supreme Court declined review.

In February 2019, 11 months after the mandate was issued following the appeal of the denial of his first K.S.A. 60-1507 motion, Nichols filed a second K.S.A. 60-1507 motion, which is the subject of this appeal. He makes three claims: (1) ineffective assistance of counsel; (2) his conviction was based on falsified, tainted, and unreliable evidence, perjured testimony, and prosecutorial error; and (3) actual innocence.

While Nichols again contended that his trial counsel was ineffective, he also contended that the attorney who he had retained to represent him on his first K.S.A. 60-1507 motion provided ineffective assistance in those proceedings. As we understand them—and without comment on their potential merit—it appears from his rambling, often repetitive, and sometimes confusing supporting memorandum that Nichols claimed his 60-1507 counsel was ineffective in the following respects:

4

• Before trial, defense counsel obtained records from a psychologist and a private detective that showed deficiencies in the forensic interview by Swan. Defense counsel should have retained an expert to testify and impeach Swan with this information. Nichols' original 60-1507 counsel had the same records "and he in turn did nothing with them. Including securing and hiring an expert witness to establish the ineffective assistance of counsel Mr. Nichols received from [counsel in his original K.S.A. 60-1507 proceeding]."

• At the evidentiary hearing on Nichols' motion, his counsel should have called various witnesses, whom Nichols claims lied at trial, to testify so that counsel could confront them with their perjured trial testimony.

Nichols also claimed the prosecutor made erroneous and prejudicial statements in his closing argument. Finally, Nichols claimed actual innocence, stating:

> "I am an innocent man, falsely accused, wrongfully convicted. Conviction based upon multiple constitutional violations meaning that it is the constitutional violations that allowed the conviction to, occur, and/or to stand through the appellate process.
> . . . .
> "I was convicted upon the basis of falsified perjured testimony in violation of my Fifth [and] Fourteenth Amendments to the United States Constitution being Due Process."

In December 2019, the district court summarily dismissed Nichols' second K.S.A. 60-1507 motion as successive. The court stated:

> "On February [15], 2019 the petitioner filed another request for post-conviction relief. Once again petitioner alleges ineffective assistance of counsel as a claim. In addition, petitioner asserts that his convictions were based upon falsified evidence and perjured testimony. Petitioner asserts a claim of actual innocence based upon his claims of ineffective assistance of counsel and falsified evidence and perjured testimony.

5

"K.S.A. 60-1507(c) states that the District Court shall not be required to entertain a second motion for similar relief from the same petitioner. However, a colorable claim of actual innocence when coupled with an unusual event may excuse the procedural bar to successive motions pursuant to K.S.A. 60-1507. Beauclair v. State, 308 KAN. 284 (2018).

"In the instant case the assertion of falsified evidence and perjured testimony when coupled with the old claim of ineffective assistance of counsel does not in this Court's opinion reach the 'unusual event' threshold as stated in Beauclair v. State.

"Therefore, this case is dismissed."

This appeal followed.


ANALYSIS


K.S.A. 60-1507 provides the vehicle for prisoners in custody serving a court-imposed sentence to seek a writ of habeas corpus. Nichols based his claim for habeas relief on the ineffectiveness of his counsel in his initial K.S.A. 60-1507 proceedings, along with other claims which we noted earlier. When confronted with a K.S.A. 60-1507 motion, the district court has three options to resolve it:

"(a) determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (b) determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held after appointment of counsel. If the court then determines there is no substantial issue, the court may deny the motion; or (c) determine from the motion, files, records, or preliminary hearing that there is a substantial issue requiring an evidentiary hearing." *Fischer v. State*, 296 Kan. 808, Syl. ¶ 3, 295 P.3d 560 (2013).

Here, the district court summarily dismissed Nichols' motion as successive before reaching these three options for resolving the motion on the merits.

As a threshold matter, we disagree with the State's contention that Nichols is barred from pursuing any claim of ineffective assistance of counsel because his counsel was retained rather than appointed by the court. Nichols acknowledges there is no constitutional right to effective assistance of counsel in K.S.A. 60-1507 proceedings. See *Robertson v. State*, 288 Kan. 217, 228, 201 P.3d 691 (2009); *Brown v. State*, 278 Kan. 481, 483, 101 P.3d 1201 (2004). But previous panels of this court have held that there is a conditional statutory right to the effective assistance of counsel in a K.S.A. 60-1507 proceeding. This statutory right applies regardless of whether counsel was appointed or retained. *Skaggs v. State*, 59 Kan. App. 2d 121, 132, 479 P.3d 499 (2020), *rev. denied* 313 Kan. ___ (April 23, 2021); see *McIntyre v. State*, 54 Kan. App. 2d 632, 638-43, 403 P.3d 1231 (2017). Once this statutory right attaches, a K.S.A. 60-1507 movant is entitled to effective assistance of that counsel, whether retained or appointed. *Robertson*, 288 Kan. at 228; *Brown*, 278 Kan. at 483-84.

The district court did not reach the merits of the issues raised in Nichols' motion because of K.S.A. 2020 Supp. 60-1507(c), which provides: "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." The court found that Nichols' motion was successive and dismissed it without a hearing. When the district court summarily dismisses the motion, as was done here, our review on appeal is de novo. Because the district court's summary dismissal was based upon the motion being successive, that is the issue we will review de novo in this appeal.

A movant is presumed to have listed all grounds for relief in the movant's original K.S.A. 60-1507 motion. *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013).

7

Under Supreme Court Rule 183(d)(3) (2021 Kan. S. Ct. R. 240), the sentencing court may not consider successive motions by the same movant when the grounds for relief already have been determined on the merits against the movant in a prior motion and "justice would not be served by reaching the merits of the subsequent motion."

Based on the clear language of this Supreme Court Rule, which goes beyond the statute's reference to "a second or successive motion for similar relief," Nichols' second motion is not successive because the grounds for relief—the claimed ineffectiveness of Nichols' counsel in his first K.S.A. 60-1507 motion—have not already been determined on the merits against the movant in a prior motion.

In any event, for a successive motion to not be summarily dismissed as being an abuse of remedy, the movant must show exceptional circumstances. *State v. Mitchell*, 284 Kan. 374, Syl. ¶ 5, 162 P.3d 18 (2007). The *Mitchell* court defined exceptional circumstances as "unusual events or intervening changes in the law that prevented the defendant from raising the issue in a preceding 60-1507 motion." 284 Kan. at 379. The movant bears the burden of establishing exceptional circumstances. *Wimbley v. State*, 292 Kan. 796, 805, 275 P.3d 35 (2011).

The district court relied on *Beauclair*, 308 Kan. 284, in its decision dismissing Nichols' motion as successive.

Beauclair pleaded no contest to two sex crimes after having told the Topeka police detective that "he sexually abused his stepdaughter in ways that factually and legally supported the charges to which he later pleaded no contest." *Beauclair v. State*, No. 112,556, 2016 WL 852859, at *2 (Kan. App. 2016) (unpublished opinion).

About two years later Beauclair moved to withdraw his plea based, in part, on newly discovered evidence. He had obtained an affidavit in which the victim recanted her

8

accusations that led to Beauclair's pleas. At the evidentiary hearing on the motion, Beauclair's lawyer failed to call the affiant to testify. Thus, the district court rejected the recantation affidavit as hearsay and denied relief on the motion.

Thereafter, Beauclair pursued a series of unsuccessful motions. His last was a pro se K.S.A. 60-1507 motion in which he claimed actual innocence as a "gateway" to excuse his motion being either untimely or successive. His substantive claims included various claimed errors at his plea and sentencing hearings, as well as claims that his trial and appellate counsel had been ineffective and that his original postconviction counsel was ineffective for not calling the victim who recanted her accusations against Beauclair to testify at the hearing on Beauclair's motion. The district court found the motion was untimely and successive. The relief he sought was the same relief he had sought in a previous motion that was denied by the district court and affirmed on appeal—that he should be allowed to withdraw his pleas and the court should set aside his convictions. Moreover, the claims he was now making could have been raised in his earlier motions. The district court's summary dismissal of Beauclair's K.S.A. 60-1507 motion was affirmed by this court. 2016 WL 852859, at *3-5.

On review, our Supreme Court initially analyzed Beauclair's actual innocence claim in the context of the finding that the motion was untimely; that is, whether an untimely motion nevertheless should be heard to avoid manifest injustice. The court noted that in *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014), the court provided a nonexclusive list of factors to be considered in determining manifest injustice. But in response to *Vontress*, the Legislature amended K.S.A. 60-1507 to limit the bases for a finding of manifest injustice to (1) circumstances that prevented the movant from filing a timely K.S.A 60-1507 motion and (2) whether the movant makes a colorable

9

claim of actual innocence. The *Beauclair* court focused on the element of a colorable claim of actual innocence. 308 Kan. at 297-301.

The *Beauclair* court recognized two types of claims of actual innocence. The first is a claim that the movant is actually innocent in spite of having been found guilty in a fair and error-free trial, as was the case in *Herrera v. Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993).

The second type is found in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). There, the claim was that constitutional errors—ineffectiveness of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and the government's withholding of evidence at trial under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963)—deprived the jury of critical evidence that would have established the petitioner's innocence. The claim of actual innocence served as a gateway to consideration of Beauclair's K.S.A. 60-1507 claims on the merits. *Beauclair*, 308 Kan. at 301. Under this *Schlup*-type claim of actual innocence, the movant must satisfy the requirement in *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), "'that more likely than not any reasonable juror would have reasonable doubt'" about the guilty verdict. *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).

The *Beauclair* court adopted the analysis in *Schlup* and the standard set forth in *Carrier* in defining for Kansas what constitutes a colorable claim of actual innocence in a K.S.A. 60-1507 proceeding—"regardless of whether actual innocence was advanced as a procedural tool, as here, or as an independent substantive claim." *Beauclair*, 308 Kan. at 301.

The court noted that while Beauclair admitted to the police that he had abused his stepdaughter before pleading no contest, he claimed before the Supreme Court that his

10

confession to the police was false and coerced by his plea counsel to benefit Beauclair's wife, whom Beauclair's counsel also represented, resulting in a potential conflict of interests for Beauclair's counsel. 308 Kan. at 303. In order to determine whether Beauclair's claim of actual innocence actually undermined confidence in his convictions, the matter was remanded to the district court for an evidentiary hearing.

> "Simply put, because the recantations and Beauclair's explanation of why he would have made a false confession may meet the *Carrier* standard as it is now echoed in K.S.A. 2017 Supp. 60-1507(f)(2)(A)—i.e., they may make it more likely than not that no reasonable juror would have convicted him—we remand to the district court for an evidentiary hearing in which the judge hears live testimony on the gateway claim of actual innocence. That claim will qualify as 'colorable' if there is 'sufficient doubt' about Beauclair's guilt 'to undermine confidence' in his conviction 'without the assurance' that the conviction 'was untainted by constitutional error.' See *Schlup*, 513 U.S. at 317. If that threshold is reached, the one-year time limit of K.S.A. 60-1507(f) should be excused and the district judge should then address the merits of Beauclair's K.S.A. 60-1507 motion." *Beauclair*, 308 Kan. at 303-04.

Turning to the issue of successiveness, the *Beauclair* court noted the requirement in *Mitchell*, 284 Kan. 374, Syl. ¶ 5, that the movant must show exceptional circumstances in order to avoid the dismissal of a second K.S.A. 60-1507 motion as an abuse of remedy. The court concluded:

> "We have no hesitation in holding that a colorable claim of actual innocence based on a crime victim's recantation of the testimony that forms the basis for the charge against a defendant qualifies as 'an unusual event . . . that prevented the defendant [from] raising the issue' previously. Thus, if Beauclair is successful on remand in showing a colorable claim under the *Carrier* standard, he will meet not only the manifest injustice standard to excuse untimeliness but also the exceptional circumstances standard to excuse successiveness. On the way to this conclusion, we also note that Beauclair's earliest effort to draw the district court's attention to the validity or lack of validity of his actual innocence claim was stymied by his K.S.A. 60-1507 counsel's failure to secure live

11

testimony from Beauclair's stepdaughter. The remand for an evidentiary hearing on actual innocence that we order today will provide an opportunity to remedy counsel's omission and the subsequent—and possibly undue—short shrift given Beauclair's actual-innocence claim by district and appellate judges." *Beauclair*, 308 Kan. at 304-05.

*Beauclair* teaches us that if a movant is successful in demonstrating a colorable claim of actual innocence at an evidentiary hearing devoted to that issue only, the movant has satisfied the exceptional circumstances standard to excuse successiveness. But overcoming this hurdle only means that the court can then examine the merits of the movant's claims to determine (1) if the motion, files, and case records conclusively show the movant is not entitled to relief so as to require a summary denial of the motion; (2) if there is a potentially substantial issue justifying a preliminary hearing; or (3) if there is a substantial issue requiring an evidentiary hearing on the merits of the claims. If Nichols gets as far as option (3), he will have a high burden to meet. He will have to demonstrate that his K.S.A. 60-1507 counsel was ineffective at the hearing on his original K.S.A. 60-1507 motion. He will also have to demonstrate that he was prejudiced thereby because the outcome of his original K.S.A. 60-1507 proceedings would have been favorable to him but for the ineffectiveness of his latest K.S.A. 60-1507 counsel *and* the favorable outcome in his original K.S.A. 60-1507 proceedings would have resulted in a retrial with an outcome again favoring him.

In Nichols' case we have nothing so dramatic as a confession of guilt and a plea of no contest followed by a recantation by the victim. Nichols made no confession, he pleaded not guilty, and he was tried and convicted of his crimes based upon the credibility of the State's key witnesses. Rather than a later recantation by his victims constituting an unusual event, in Nichols' case the unusual event could arise from ineffective assistance his counsel in his original K.S.A. 60-1507 proceedings provided, a claim he could not have raised in the initial K.S.A. 60-1507 proceedings because the

12

claim had not yet arisen and would not have been known or knowable to Nichols until the hearing on his original K.S.A. 60-1507 motion.

Here, the district court summarily dismissed Nichols' motion without an evidentiary hearing to determine if exceptional circumstances excused the filing of his second K.S.A. 60-1507 motion.

If it is possible for a colorable claim of actual innocence to be based on the victim's claimed recantation in spite of the defendant's confession of guilt to the police, then we consider that it is possible that a colorable claim of actual innocence can be found based upon the allegations Nichols has made in this case, particularly in view of the fact that his claims seek to undermine the credibility of the victims and forensic interviewer who were central to his convictions.

The district court summarily concluded that Nichols had not shown an "unusual event" as a predicate to the district court's consideration of his claims on the merits. Given the fact that Nichols' convictions turned on the uncorroborated testimony of the two girls and the testimony of their forensic interviewer, whose interview is claimed to have been tainted, and the claimed failure of Nichols' original K.S.A. 60-1507 counsel to raise trial counsel's claimed inadequacies in addressing this testimony—an inadequacy that could not have been raised in the original K.S.A. 60-1507 proceedings—we conclude that the district court should have provided Nichols with an evidentiary hearing on the threshold question of whether he has asserted a colorable claim of actual innocence that would then permit the district court to consider his claims on the merits.

Accordingly, we reverse and remand to the district court for an evidentiary hearing on Nichols' claim of actual innocence.

Reversed and remanded with directions.