NOT DESIGNATED FOR PUBLICATION

Nos. 124,000
124,006
124,007

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEPHEN ALAN MACOMBER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Marshall District Court; RICHARD M. SMITH and MERYL D. WILSON, judges. Opinion filed June 10, 2022. Affirmed.

*Chris Biggs*, of Knopp and Biggs PA, of Manhattan, for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and GARDNER, JJ.

PER CURIAM: Stephen Alan Macomber alleges that the trial court erred in denying his K.S.A. 60-1507 motion. His K.S.A. 60-1507 motion claims trial and sentencing errors. He argues that his sentence was not valid because sentencing occurred in the wrong county. He asserts that the State violated his right to counsel because the prosecutor had recordings of phone calls he made from jail to his attorney. He claims that his previous counsel was ineffective for failing to raise the issue of prosecution access to attorney-client phone calls. He contends that the trial court abused its discretion by

1

denying his motions to present additional evidence, to amend the judgment, and to hold a new trial. Macomber argues that the trial court erred by not providing funding for an expert witness. And Macomber argues that the trial judge's bias denied him a fair trial. For the reasons set forth below, we reject these contentions. As a result, we affirm the trial court's denial of his K.S.A. 60-1507 motion.

FACTS

This court previously presented the facts of Macomber's underlying convictions in *State v. Macomber*, No. 107,205, 2013 WL 3455776 (Kan. App. 2013) (unpublished opinion) (*Macomber I*) and *State v. Macomber*, No. 107,206, 2013 WL 3455777 (Kan. App. 2013) (unpublished opinion) (*Macomber II*).

Briefly, Macomber shot and killed Ryan Lofton in Lofton's driveway and drove away from the scene. Macomber raises no issues here related to the Shawnee County case resulting from killing Lofton. As Macomber drove away from the incident, Marshall County Sheriff's Deputy Fernando Salcedo pulled him over for driving 77 mph in a 55-mph zone. After a scuffle in which Macomber shot Salcedo twice, Macomber took Salcedo's patrol vehicle. He then happened upon 67-year-old Hedy Saville outside her home. At gunpoint, Macomber instructed Saville to help him hide Salcedo's patrol car in her garage and then held her hostage in her basement. Police arrived at Saville's house and negotiated her successful release. Hours after Saville's release, police used tear gas to force Macomber out of Saville's house and arrested him. Police recovered video from a camera in Salcedo's patrol car which showed Macomber's encounters first with Salcedo and later with Saville. See *Macomber I*, 2013 WL 3455776; *Macomber II*, 2013 WL 3455777; *State v. Macomber*, No. 108,301, 2014 WL 4723685 (Kan. App. 2014) (unpublished opinion).

2

In 10-CR-59, regarding the incident with Officer Salcedo, a jury convicted Macomber of attempted first degree murder, aggravated battery on a law enforcement officer, aggravated robbery, aggravated assault on a law enforcement officer, and criminal possession of a firearm. Macomber's total sentence was 738 months in prison. *Macomber I*, 2013 WL 3455776, at *4-5.

In 10-CR-60, regarding the incident with Saville, another jury convicted Macomber of kidnapping, aggravated burglary, aggravated assault, criminal possession of a firearm, and criminal threat. His aggregate sentence was 265 months in prison. *Macomber II*, 2013 WL 3455777, at *15.

In July 2011, the trial judge, the Honorable John L. Weingart, handed down sentences of 738-months and 265-months, respectively, for case 10-CR-59 and for case 10-CR-60. Judge Weingart held the sentencing hearing in the Brown County Courthouse for the following reasons: "[T]he defendant was being incarcerated in Shawnee County. Part of the prosecution team was from Shawnee County. And the, the date available for— that was compatible with the counsel's schedule was today, and I was scheduled in Brown County." Macomber did not object as the trial court was scheduling the hearing, nor did Macomber object during the sentencing hearing in Brown County.

At sentencing, Judge Weingart first addressed Macomber's motion to dismiss, motion for a new trial, and motion for testimony. Macomber's motion for a new trial alleged that the prosecution listened to recordings of phone calls that Macomber made from jail to his defense counsel. This motion was Macomber's second such allegation, as he had raised the issue in a motion to suppress any recordings of attorney-client phone calls. At arraignment, Judge Weingart suggested that defense counsel travel to the Shawnee County Jail for in-person visits to avoid telephone calls being recorded.

At the sentencing hearing, Captain Timothy Phelps of the Shawnee County Jail testified that the prosecution subpoenaed "all available telephone calls for Stephen Macomber." Phelps testified that the jail gave all recorded phone calls, including attorney-client calls, to the prosecutor's office. Special Prosecutor Jacqueline J. Spradling testified about the phone calls as follows:

"At approximately October of 2010, the—I have come to learn that the Shawnee County Jail changed their policies when Captain Phelps took over, and instead of issuing all of—all of the phone calls except the defendant's calls to the attorney, when Captain Phelps took over in October of 2010, he now complies with the subpoena so that all of the calls are given to the prosecution. That change in policy was not communicated to me or the district attorney's office.

"And so when we issued our subpoena on March 4, 2011, we believed that we would receive the same type of phone calls as we always have. However, according to the March 4, 2011, subpoena, the new calls included calls from and between an inmate and their attorney. Once I heard the defendant asking for Bill, I stopped listening."

Judge Weingart denied Macomber's motion for a new trial and moved on to sentencing.

On direct appeal, Macomber's pro se brief raised the issue of Spradling listening to attorney-client phone calls. But this court held that Macomber raised the point incidentally, thereby waiving it on appeal. *Macomber I*, 2013 WL 3455776, at *13.

After Macomber's direct appeal, he petitioned for writ of habeas corpus alleging ineffective assistance of trial and appellate counsel, violation of his speedy trial, fair trial, and due process rights, and cumulative error. Macomber also moved pro se to hire a legal expert to testify to legal professional norms and prevailing standards on his ineffective assistance of counsel claims. The trial court then appointed counsel to represent Macomber on his K.S.A. 60-1507 claims.

Judge Weingart recused himself from the K.S.A. 60-1507 proceedings after calling Macomber "evil" in ex parte communication with the State. Judge Weingart held a status conference on Macomber's motion with some parties appearing in person and some appearing by phone. After the conference, Macomber's counsel hung up, but Macomber was still connected. Judge Weingart had an ex parte conversation with those physically present in the room: the county attorney, county attorney staff and/or a clerk who helped set up the phone, and the court reporter. Judge Weingart later testified about that conversation as follows:

> "And essentially my recollection of the conversation was I said something I thanked the clerks or whoever was involved in helping getting the call set up because it was kind of a problem, and then I said that I think I commented about you and said Mr. Desch is a nice man to work with, nice lawyer to work with, something like that, and then I think by and large I think the recollections of Mr. Macomber are correct in terms of the conversation. Something about what is the sum and substance of the 1507, and there was a comment made that competency of Mr. Macomber, and then I think I drew a comparison I said well Mr. Macomber, something about his pleadings are outstanding for pro se pleadings, and Mr. Macomber is very smart, and then I said that Mr. Macomber's problem is he's evil, and I think that was the sum and substance of it. I think, by and large I think Mr. Macomber's recollection is not that far off, except his testimony as to when I developed my opinion if he was evil."

Judge Weingart recused himself from further proceedings concerning Macomber's K.S.A. 60-1507 motion.

At an evidentiary deposition on Macomber's K.S.A. 60-1507 motion, Spradling testified that the Shawnee County Jail "didn't turn over attorney-client phone calls" and that the "phone calls that were turned over were always screened by the legal assistant . . . who checked the phone numbers to make sure that there were not attorney calls on there." Spradling testified that because of this process she did not "even get the phone calls that

are between attorney and client." She also testified that she offered Macomber's jail phone calls for admission into evidence in a separate Shawnee County case.

The Honorable Richard Smith denied Macomber's petition. Judge Smith rejected Macomber's argument about attorney-client privileged phone calls in part because "the vast majority of jurisdictions throughout the United States temper that privilege with a rule that when a correctional facility posts notices that conversations will be recorded attorney-client privilege is in fact waived."

Judge Smith also dismissed Macomber's complaint that his counsel did not brief the jail phone call issue as a "bald assertion" that counsel was ineffective. Judge Smith saw no basis for Macomber's false assumption that "'[h]ad [counsel] properly briefed this issue Macomber's convictions would have been reversed and his charges dismissed.'" Judge Smith denied Macomber's motion.

Judge Smith also made findings related to Macomber's claim of judicial bias as follows:

> "At the evidentiary hearing held by this court Judge Weingart appeared truly regretful for having made any remark of the kind. The judge explained the context of the remark was . . . intended as an initial compl[i]ment regarding Mr. Macomber's obvious intellect and presumed abilities and that it was sad that he had committed such evil acts. While this might seem, on its face, a retrospective attempt to moderate an offensive comment it was blatantly obvious to the court Weingart was sincere, honest, open and contrite in this explanation. His described motivation for making the remark is corroborated by this court's observation of Mr. Macomber which quite frankly is quite oxymoronic. Mr. Macomber presents as an extraordinarily intelligent individual who, except for the tendency, on occasion, to interrupt his own counsel and speak in violation of court decorum, is best described as respectful, friendly, and intellectually intense. It would be very reasonable and believable that the true tenor of Judge Weingart's demeanor was

6

intended to sound of the motto recited in the old television commercial aired attempting [to] encourage the disadvantaged, 'a mind is a terrible thing to waste.'

"Judge Weingart was asked the specific question as to whether or not he felt as though any personal feelings or animosity[,] prejudice or personal judgments regarding Mr. Macomber's character . . . affected any ruling he had made in the proceedings. In a moment which struck this court as particularly moving Judge Weingart stated that he had spent a great deal of time and introspection evaluating both trials and every ruling he made and was absolutely certain no ruling was made for an inappropriate reason. The fashion and demeanor of [J]udge Weingart as he answered that question spoke of nothing but pure honesty and remorse for not only making a remark which was at best [i]nartful but could be easily misconstrued as suggesting bias or prejudice."

Judge Smith then addressed the adverse rulings that Macomber alleged showed prejudice. Macomber numbered the rulings one through eight. Although Judge Smith did not number his findings or seem to address each ruling individually, he clearly referenced the content of Macomber's complaints. For example, Macomber complained of Judge Weingart admonishing him for speaking while his attorney was speaking. Judge Smith explained that judges regularly exercise control for the benefit of a court reporter who cannot accurately record two people talking simultaneously. Judge Smith then described from transcripts how Judge Weingart increasingly made space for Macomber to speak.

Macomber filed a notice of appeal, but then followed up with a motion to alter or amend and a motion for new trial. Macomber also moved for the court to consider expert testimony on effectiveness of counsel, which presumably would be testimony presented if the trial court conducted more evidentiary hearings. In Macomber's supplemental brief in support of his motions, he summarized his recorded phone calls. Macomber noted that in one phone call he told his attorney that the content of a State's discovery motion showed that Spradling was apparently listening to their phone calls. He then told his attorney more than once that he did not want to discuss some topics over the phone because he believed that Spradling was listening. Macomber argued that his defense was impeded

because his calls to his attorney were recorded, and he believed the prosecution was listening.

The trial court denied these new motions.

Macomber timely appeals.

ANALYSIS

*Did the trial court err by holding Macomber's sentencing hearing in a different county from his trial?*

Macomber argues that the trial court lacked jurisdiction to impose his sentence because the sentencing hearing took place in Brown County. The State contends that the jurisdictional requirement was met when Macomber was tried in Marshall County to a jury pulled from Marshall County. The State asserts that holding the sentencing hearing in a different county of the same judicial district was an issue of venue, which Macomber waived by not objecting.

A trial court has three options when handling a K.S.A. 60-1507 motion:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.'" *State v. Adams*, 311 Kan. 569, 578, 465 P.3d 176 (2020).

The standard of review depends on which of these options a trial court used. 311 Kan. at 578.

8

After a full evidentiary hearing on a K.S.A. 60-1507 motion, the trial court must issue findings of fact and conclusions of law on all issues presented. Supreme Court Rule 183(j) (2022 Kan. S. Ct. R. at 242). An appellate court reviews the court's findings of fact to determine whether they are supported by substantial competent evidence and can support the court's conclusions of law. Appellate review of the trial court's ultimate conclusions of law is de novo. *Balbirnie v. State*, 311 Kan. 893, 897-98, 468 P.3d 334 (2020).

To be entitled to relief under K.S.A. 2021 Supp. 60-1507(b), the movant must establish by a preponderance of the evidence either: (1) "the judgment was rendered without jurisdiction"; (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." See Supreme Court Rule 183(g) (preponderance burden).

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Lundberg*, 310 Kan. 165, 170, 445 P.3d 1113 (2019).

Subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on the appellate court's own motion. *State v. Castillo*, 54 Kan. App. 2d 217, 219, 397 P.3d 1248 (2017).

Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel; a failure to object to the court's jurisdiction does not invest the court with the requisite subject matter jurisdiction. *State v. Hoffman*, 45 Kan. App. 2d 272, 275, 246 P.3d 992 (2011).

Macomber claims that his sentencing violated both constitutional and statutory jurisdictional requirements. Section 10 of the Kansas Constitution Bill of Rights

9

guarantees the accused "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Macomber notes the undisputed facts that the crime occurred in Marshall County, the trial was in Marshall County, and the sentencing hearing was in Brown County. Macomber does not argue that he did not have a speedy public trial by an impartial jury of Marshall County as required by Kansas Constitution Bill of Rights, section 10. Instead, Macomber repeatedly asserts that sentencing is "incident" to trial without explaining why the term is significant for his argument. He fails to develop this contention into an argument that his constitutional rights under section 10 were violated, and he provides no citations to that effect. A point raised incidentally in a brief and not argued therein is deemed waived or abandoned. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). To the extent that Macomber claims constitutional error, we decline to address his argument because he does not present one.

But Macomber correctly argues that the trial court did not comply with the statutory requirement of K.S.A. 22-2602. The Kansas Code of Criminal Procedure specifies the location of criminal proceedings under Article 26, Jurisdiction and Venue. K.S.A. 22-2602, Place of trial, states the following: "Except as otherwise provided by law, the prosecution shall be in the county where the crime was committed."

The State incorrectly asserts that the term "prosecution" in K.S.A. 22-2602 is undefined, contending that the term includes trial but does not include sentencing. K.S.A. 2021 Supp. 21-5111(x) defines prosecution as "all legal proceedings by which a person's liability for a crime is determined." This definition from the criminal code also applies to the code of criminal procedure. "Words or phrases not defined in this code but which are defined in the Kansas criminal code shall have the meanings given therein except when a particular context clearly requires different meanings." K.S.A. 22-2201(2).

10

Kansas courts have long held that the definition of prosecution includes sentencing within its meaning. "The State's 'prosecution' of a defendant found guilty either by a judge or a jury generally ends with pronouncement of sentence." *State v. Barlow*, 303 Kan. 804, 816, 368 P.3d 331 (2016). "The sentencing phase of a criminal proceeding clearly constitutes a proceeding in the 'prosecution' of a criminal case." *State v. Arculeo*, 29 Kan. App. 2d 962, 972, 36 P.3d 305 (2001). "A judgment regularly rendered on one of the offenses included in the verdict, which has been executed in part by the imprisonment of the defendant, is the end of the prosecution, and exhausts the power of the court in the case." *In re Beck*, 63 Kan. 57, Syl. ¶ 2, 64 P. 971 (1901). The Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless there is some indication that the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). And our Supreme Court in these cases defines "prosecution" to include sentencing.

The trial court erred because K.S.A. 22-2602 required the prosecution to be in Marshall County. But the sentencing hearing, which is part of the prosecution, occurred outside Marshall County. The remaining question is whether the error leads to loss of jurisdiction or leads to improper venue or both.

"Subject matter jurisdiction is the power of the court to hear and decide a particular type of action." *State v. Matzke*, 236 Kan. 833, 835, 696 P.2d 396 (1985). "The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time." *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016) (citing *Trotter v. State*, 288 Kan. 112, Syl. ¶ 4, 200 P.3d 1236 [2009]). In Kansas, trial courts "have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law." K.S.A. 20-301. Trial courts have "exclusive jurisdiction to try all cases of felony and other criminal cases arising under the statutes of the state of Kansas." K.S.A. 22-2601.

"Subject matter jurisdiction lies in the district court and follows the defendant through the process of the issuing of the complaint, arrest pursuant to a warrant, initial appearance, the setting or denial of bond at the bond hearing, and the preliminary hearing, arraignment, and trial." *State v. Hall*, 246 Kan. 728, 757, 793 P.2d 737 (1990), *overruled on other grounds by Dunn*, 304 Kan. 773.

The trial court retains jurisdiction over a case until its order becomes final. See *Sanders v. City of Kansas City*, 18 Kan. App. 2d 688, 692, 858 P.2d 833 (1993) ("In Kansas, the district court retains jurisdiction until an appeal is docketed with the appellate court."). A judgment becomes final in a criminal case once the defendant is convicted and sentenced. *State v. Howard*, 44 Kan. App. 2d 508, 511, 238 P.3d 752 (2010).

Macomber argues unpersuasively that the error was a jurisdictional one. He cites several cases which state that venue equals jurisdiction in criminal cases. But all the cases Macomber cites deal with the court's power to try the defendant. See, e.g., *Dunn*, 304 Kan. 773. Macomber is correct that, from the commission of the crime through the jury's verdict, venue is jurisdictional and implicates the trial court's subject matter jurisdiction. *State v. Kendall*, 300 Kan. 515, 530, 331 P.3d 763 (2014). "Venue must be proved to establish the jurisdiction of the court; it is a question of fact to be determined by the jury." *State v. Hunt*, 285 Kan. 855, 859, 176 P.3d 183 (2008). But the State here proved venue to the jury, establishing the trial court's jurisdiction over Macomber's case.

Undisputedly, Judge Weingart had the authority to pronounce sentence. He presided over the trial and the case remained assigned to him. Thus, the essence of Macomber's contention is that Judge Weingart could not pronounce sentence in the Brown County Courthouse but was instead limited to the Marshall County Courthouse. But K.S.A. 20-301a provides that "[t]he judicial power and authority of a judge of the district court in each judicial district may be exercised anywhere within such judicial district." If Judge Weingart had the power to sentence Macomber, which is undisputed,

12

then Judge Weingart had that power anywhere within that judicial district. Thus, the error is not a jurisdictional one.

But, as Macomber correctly argues, the power of the judge under K.S.A. 20-301a to act within a jurisdictional district does not dispense with the K.S.A. 22-2602 requirement that the prosecution occur in the county where the crime occurred. Thus, an error did occur. Although the trial court retained jurisdiction, it exercised its jurisdiction in an improper venue.

The State contends that Macomber waived improper venue because he did not object. Macomber replies that the hearing occurred in Brown County to accommodate the prosecutors and the State does not provide a standard for what constitutes waiver. But our difficulty with Macomber's claim is that he raises it for the first time in a K.S.A. 60-1507 motion.

Supreme Court Rule 183(c)(3) (2022 Kan. S. Ct. R. at 243) provides:

> "A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal."

See also *State v. Neal*, 292 Kan. 625, 630, 258 P.3d 365 (2011) (acknowledging general rule that defendant must raise all available issues on direct appeal); *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009) (stating K.S.A. 60-1507 motion cannot serve as vehicle to raise issue that should have been raised on direct appeal unless movant shows exceptional circumstances excusing failure to raise it earlier).

Trial errors affecting constitutional rights under Rule 183(c)(3) would include Macomber's right to trial by a Marshall County jury under section 10 of the Kansas Constitution Bill of Rights. And even if that were the issue that Macomber was raising in his K.S.A. 60-1507 motion, he would need to show exceptional circumstances to raise the issue. But Macomber's sentencing is covered by the word "prosecution" in K.S.A. 22-2602, not the phrase "a speedy public trial by an impartial jury" in section 10. Thus, Macomber raises merely a statutory issue, not a constitutional one. Even if we were to assume that Macomber's claim involved a trial error affecting his constitutional right, he has failed to show exceptional circumstances excusing his failure to raise the issue on direct appeal. Macomber's claim is neither jurisdictional nor constitutional. Because he raises a statutory venue error for the first time in his K.S.A. 60-1507 motion and because the trial court's venue error did not lead to loss of jurisdiction, we affirm.

*Did the State violate Macomber's right to counsel because it had access to jail phone calls, including attorney-client calls?*

Macomber argues that he was deprived of his right to counsel because the State had access to phone calls that he made from jail to his defense counsel. The State incorrectly asserts that Macomber is barred from raising this issue because it is res judicata. Because Macomber is precluded from raising this trial error in a K.S.A. 60-1507 motion, we decline to address the issue directly, but instead we will focus on Macomber's claim that counsel was ineffective for failing to raise this issue.

Macomber argues that the State violated his right to counsel under the Sixth Amendment to the United States Constitution. He asserts that the State violated this right by accessing recordings of his phone calls to his attorney from jail. Macomber recites facts from the record related to the phone calls and facts outside the record related to the prosecutor. Spradling testified that she did not listen to the phone calls at the 2011 hearing where Judge Weingart considered and denied Macomber's motion for a new trial

14

and then moved on to sentencing. In 2011, Spradling testified that if she heard Macomber ask for his attorney, she would stop listening. But in 2017, at an evidentiary deposition for this K.S.A. 60-1507 motion, Spradling testified that a legal assistant pre-screened the calls so that Spradling did not receive the audio files of Macomber's attorney-client calls. Macomber contends that Spradling's inconsistent testimony undermines her credibility.

Macomber also argues that Spradling's testimony was not credible because of Spradling's pattern of prosecutorial misconduct. Macomber lists six criminal cases in which appellate courts reversed because of Spradling's misconduct, including two of his own cases. He also notes that the Kansas Board for Discipline of Attorneys recommended to our Supreme Court that Spradling be disbarred. On May 20, 2022, our Supreme Court officially disbarred Spradling. He rests his claim on the factual contentions that the State had access to his attorney-client calls and that Spradling's testimony of not listening to the calls was not credible.

For legal support, Macomber leans heavily on *United States v. Carter*, 429 F. Supp. 3d 788 (D. Kan. 2019), *vacated in part on other grounds* No. 16-20032-02-JAR, 2020 WL 430739 (D. Kan. 2020) (unpublished opinion) (vacating the sanction of attorney fees against the noncooperative government entity because of sovereign immunity). In *Carter*, federal prosecutors possessed and distributed audio recordings of telephone calls between various attorneys and several detainees at a large, private detention facility in Leavenworth, Kansas. The United States District Court for the District of Kansas noted the likelihood of habeas litigation which would result from the United States Attorney's Office (USAO) possessing recordings of attorney-client calls. 429 F. Supp. 3d at 899. The Federal Public Defender's Office (FPD) sought global relief for any defendant whose attorney-client communications were obtained by the USAO. The FPD sought dismissal of pending cases and a 50% reduction of sentences for all affected clients remaining in custody. 429 F. Supp. 3d at 880. Instead, the *Carter* court

laid out its roadmap for case-by-case individualized relief for the 110 habeas corpus petitions filed to date. 429 F. Supp. 3d at 901-04.

The State responds that, notwithstanding *Carter*, Macomber is barred from raising this issue. The State inaccurately claims that the issue is res judicata because Macomber raised the issue incidentally on direct appeal, and this court declined to review it. *Macomber I*, 2013 WL 3455776, at *13. But the issue is waived, not res judicata, because this court did not adjudicate the issue, finding instead that Macomber failed to properly brief it. *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 12, 136 P.3d 390 (2006) ("Under Kansas law, where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised; those issues that could have been presented, but were not presented, are deemed waived.").

More to the point, Macomber cannot raise the issue in a K.S.A. 60-1507 motion because Macomber's claim is mere trial error. He raised the issue as early as arraignment. After the jury verdict, Macomber filed a motion for new trial and called Spradling to testify about listening to phone calls at a hearing on that motion. Macomber's argument is essentially that the trial court erred in denying his motion for a new trial. Such a claim must be raised on direct appeal and a K.S.A. 60-1507 motion is not the appropriate avenue for seeking relief. See Supreme Court Rule 183(c)(3).

Macomber's brief segues quickly into his actual claim: "Mr. Macomber's position in this matter is simple: This was a great issue to appeal, and his appeal attorney missed it." "It was ineffective for K.S.A. 60-1507 and appellate counsels to not brief, and not ferret out facts or raise 6th Amendment and due process claims for this violation." In a sense, Macomber raises the issue of attorney-client calls only to tee up his next issue—that previous counsel was ineffective for failing to raise the attorney-client phone call issue. So Macomber seems aware that he cannot directly raise this issue here because he waived it on direct appeal. As a result, we decline to directly address the issue of

16

attorney-client calls and move on, as Macomber suggests, to his claim that previous counsels were ineffective for failing to raise the issue.

*Were previous counsels ineffective for failing to raise the issue of attorney-client phone calls?*

Macomber's K.S.A. 60-1507 counsel argued to the trial court that Macomber's trial and appellate counsel were ineffective because of their failure to reasonably advocate the issue of State access to attorney-client phone calls. The trial court denied Macomber's K.S.A. 60-1507 claim. On appeal, Macomber now argues that his K.S.A. 60-1507 counsel was ineffective, and he reiterates his claims that trial and appellate counsel also were ineffective.

### *Trial counsel*

Macomber's triplicate claim of ineffective assistance of counsel is best understood in chronological order. We first review his claim related to his representation at trial, although his focus is more on appellate counsel's failure to brief the issue. Then he alleges that his K.S.A. 60-1507 counsel should have persuaded the trial court that appellate counsel was ineffective.

When the trial court conducts an evidentiary hearing on claims of ineffective assistance of counsel, the appellate courts review the trial court's factual findings using a substantial competent evidence standard. Appellate courts review the trial court's legal conclusions based on those facts applying a de novo standard of review. See *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236

Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different. *Khalil-Alsalaami*, 313 Kan. at 485.

To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. 313 Kan. at 485. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. 313 Kan. at 486. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy. 313 Kan. at 486.

Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. 313 Kan. at 486.

Macomber fails to establish that his trial counsel was ineffective. Trial counsel moved to suppress phone call recordings and, more importantly, moved for a new trial after the jury's verdict. Macomber does not state anything more that his trial counsel

18

could have done. He raises the issue only incidentally. *Meggerson*, 312 Kan. at 246 (holding that a point raised incidentally in a brief and not argued therein is deemed waived or abandoned). Macomber fails to argue, much less show, that trial counsel's representation fell below an objective standard of reasonableness. It is Macomber's duty to provide facts to support his claims, not merely conclusory allegations. See *Thuko v. State*, 310 Kan. 74, 80, 444 P.3d 927 (2019). Macomber's failure to supply any factual allegations to support his claim, coupled with the lack of any explanation as to why such acts contributed to his trial counsel's ineffectiveness, is fatal to his claim.

Because Macomber's complaint about his trial counsel fails the first prong of deficient performance, we need not address the second prong of prejudice.

*Appellate counsel*

Macomber also argues that his appellate counsel was ineffective. To establish ineffective assistance of counsel on appeal, defendant must show (1) counsel's performance, based on the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness, and (2) the defendant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have succeeded. *Khalil-Alsalaami*, 313 Kan. at 526.

The failure of appellate counsel to raise an issue on appeal is not, per se, ineffective assistance of counsel. *Miller v. State*, 298 Kan. 921, 932, 318 P.3d 155 (2014). For example the failure of direct appeal counsel "'to foresee a change in the law may lead to [K.S.A.] 60-1507 relief if the failure was not objectively reasonable,'" with the caveat that the "'Sixth Amendment requires competence, not omniscience.'" *Stewart v. State*, 310 Kan. 39, 53-54, 444 P.3d 955 (2019) (quoting *Laymon v. State*, 280 Kan. 430, 439-40, 122 P.3d 326 (2005). But see *Barr v. State*, 287 Kan. 190, 197, 196 P.3d 357 (2008)

19

(ability of counsel from the Appellate Defender's Office to anticipate the shift in law does not apply to trial counsel from a local public defender's office).

Macomber filed a pro se brief in *Macomber I* arguing prosecutorial misconduct based on Spradling listening to attorney-client calls. 2013 WL 3455776, at *13. His appellate counsel did not brief the issue to argue a violation of the Sixth Amendment right to counsel. And *Macomber II* never mentions Macomber's calls from the jail being recorded. See 2013 WL 3455777. Macomber's K.S.A. 60-1507 motion asserts that appellate counsel was ineffective for missing this issue.

The questions of whether appellate counsel's performance was deficient and whether Macomber was prejudiced contain factual components. Macomber cites *Carter*, 429 F. Supp. 3d 788, but the *Carter* court distinguished the facts before it from *United States v. Zajac*, No. 2:06CR811DAK, 2008 WL 1808701 (D. Utah 2008) (unpublished opinion). In *Zajac*, the jail did not and could not separate telephone calls recorded by its automated system. Law enforcement and prosecutors on the case "purposefully did not review or listen to the telephone calls made to attorneys because they could have contained attorney-client communications." 2008 WL 1808701, at *4.

The *Zajac* court did not provide the defendant with relief: "When the jail was unable to separate which calls were to attorneys, the government then employed means for identifying which telephone numbers belonged to Defendant's counsel and protecting any of the telephone calls that were made to those attorneys." 2008 WL 1808701, at *5. The *Zajac* court determined that the defendant failed to provide any specific communication, transcript, or documentation that showed that the government obtained any evidence or content from these conversations or listened to the conversations. In short, the defendant provided "conclusory and speculative accusations that the government engaged in egregious and outrageous illegal conduct" and the *Zajac* court held that there was no basis for presuming prejudice. 2008 WL 1808701, at *5.

20

But the *Carter* court, by contrast, determined that the record was "replete with evidence of the USAO's systematic practice of purposeful collection, retention, and exploitation of calls from . . . detainees to their attorneys." 429 F. Supp. 3d at 900. The *Carter* court found that Special Assistant United States Attorney Erin Tomasic had knowingly and intentionally listened to attorney-client phone calls. 429 F. Supp. 3d at 824, 852. The *Carter* court found that Tomasic did not respond with candor to certain questions from the court at an evidentiary hearing and sent an intentionally misleading e-mail to the court and opposing counsel. 429 F. Supp. 3d at 836-37. Ultimately, the *Carter* court, as a fact-finder, concluded the following: "The USAO's surreptitious practice of collecting and saving, but not disclosing, attorney-client calls allowed the practice to perpetuate for years. It was only when the inexperienced and unsupervised Tomasic disseminated a voluminous batch of phone calls in discovery in the [*United States v.*] *Black* [No. 16-20032-JAR] case that the USAO's practices come to light." 429 F. Supp. 3d at 858.

The factual differences between *Zajac* and *Carter* show what Macomber would need to demonstrate in order to show that appellate counsel's failure to brief the jail call issue prejudiced him. Judge Smith held an evidentiary hearing on Macomber's K.S.A. 60-1507 motion before deciding that Macomber failed to show that his appellate counsel was ineffective. For instance, the *Zajac* court denied relief to a defendant who presented only "conclusory and speculative accusations" and Macomber would likely be entitled to the same outcome based on him putting forth similar contentions. But Macomber contends that he could have persuaded the trial court to grant his K.S.A. 60-1507 motion if his counsel had presented better evidence.

On appeal, Macomber argues that the evidence in his case is more like the evidence in *Carter*. But Macomber's difficulty is that *Carter* and *Zajac* were cases in which federal district courts, fact-finders, examined the evidence before them. "Generally, Kansas appellate courts do not make factual findings. This task is reserved

21

for district courts, where evidence is offered and tested." *State v. Yazell*, 311 Kan. 625, 627, 465 P.3d 1147 (2020). When the trial court denied Macomber's K.S.A. 60-1507 motion in early 2019, it could not have cited *Carter* because *Carter* had not been decided yet. And the trial court did not cite *Zajac*, either. Nevertheless, the facts found by the trial court align more closely with *Zajac* than with *Carter*. The trial court found that Spradling's access to attorney-client calls was unintentional, and she did not listen to them.

The trial court reviewed Macomber's claim of ineffective appellate counsel, holding as follows: "Macomber simply fails to establish that [appellate counsel] fell below an objective standard or that he suffered prejudice." "'An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). Thus, in arguing his K.S.A. 60-1507 motion, Macomber fails to show that his direct appeal counsel was deficient for failing to brief a real issue and that he was prejudiced by this deficiency. For this reason, Macomber spends the bulk of his brief arguing that his K.S.A. 60-1507 counsel was ineffective.

If we were to reverse and remand on the ineffective appellate counsel issue, it would be based on pure speculation. Here, Macomber argues that he is entitled to the same result that was obtained in *Carter*. Nevertheless, he fails to spell out factually why we should accept his argument. *Thuko*, 310 Kan. at 80. Thus, his argument offers no reasons in support of his conclusion. Because Macomber fails to show that his appellate counsel was ineffective, we affirm the trial court's denial of relief on this issue.

*Habeas counsel*

Macomber asserts two claims in which his K.S.A. 60-1507 counsel fell short in presenting evidence. First, he complains of counsel's examination of Spradling, stating

that counsel "never took gloves off" when questioning her. "His cross examination of Spradling left much to be desired." "The record was incomplete factually, and K.S.A. 60-1507 counsel repeatedly apologized for having to put Spradling through questions." His second complaint is that K.S.A. 60-1507 counsel failed to subpoena the legal assistant that Spradling said filtered out attorney-client calls.

The extent of a movant's statutory right to be provided with effective assistance of counsel in a K.S.A. 60-1507 proceeding is a legal question to be reviewed de novo. *Mundy v. State*, 307 Kan. 280, 294, 408 P.3d 965 (2018).

Although movants do not have a constitutional right to effective assistance of legal counsel on collateral attacks because they are civil, not criminal actions, Kansas provides a statutory right to counsel on collateral attacks under some circumstances. *Stewart*, 310 Kan. at 45; see K.S.A. 22-4506. Once counsel has been appointed in a postconviction matter, the appointment should not be a useless formality, so the appointed counsel has a duty to provide effective representation. *Mundy*, 307 Kan. at 295. But see *In re Care & Treatment of Ontiberos*, 295 Kan. 10, 28, 287 P.3d 855 (2012) (stating the right to counsel in sexually violent predator proceeding calls for applying *Strickland* test because the right to counsel arises from constitutional right similar to the right provided in criminal trial).

The relief Macomber seeks is a remand to conduct another evidentiary hearing on the effectiveness of his K.S.A. 60-1507 counsel. The State argues that Macomber is "seeking to nest a failed claim, already nested inside of another failed claim, inside yet another, new claim." The State correctly argues that remand is unnecessary because the record shows that K.S.A. 60-1507 counsel was not ineffective.

Macomber claims that his K.S.A. 60-1507 counsel was not aggressive enough with Spradling, but this claim does not merit a remand. To establish ineffective

23

assistance, "it is insufficient to surmise, with the benefit of hindsight, that another attorney might have tried the case differently." *Harris v. State*, 288 Kan. 414, 416, 204 P.3d 557 (2009). Instead, Macomber must show that counsel made errors so serious that the performance was less than what the Sixth Amendment to the United States Constitution guarantees. 288 Kan. at 416 (stating the standard for trial counsel); see also *Mundy*, 307 Kan. at 296 (holding that the same elements for trial counsel apply to ineffective assistance of K.S.A. 60-1507 counsel). Macomber's claim that his counsel could or should have questioned Spradling differently is an attempt to second guess his attorney in hindsight without showing that the outcome would or could have been different. Macomber asserts that "[b]asic trial advocacy skills were lacking." But he fails to outline how Spradling's testimony would differ under more effective cross-examination. For all Macomber's protestations that Spradling was not credible, the trial court makes that determination, and the trial court found her testimony credible. Macomber fails to support his contention that this outcome would have been different if only his counsel were more effective.

Macomber's other contention about evidence that counsel could have presented is equally speculative. He identifies a legal assistant who screened recorded calls as a potential witness on remand but offers no indication of evidence that she might produce.

> "'[A] defendant seeking to have a case remanded from the appellate courts should set forth with some specificity sufficient details of the evidence to be presented to the trial court . . . so the appellate court may determine in the first instance whether there are valid grounds to expect that a new trial might be granted by the trial court. The appellate courts cannot be expected to operate in a vacuum and grant every motion to remand a case already on appeal absent a showing that the motion . . . has merit and is not frivolous or an attempt to delay the appellate process.'" *State v. Van Cleave*, 239 Kan. 117, 120, 716 P.2d 580 (1986).

Macomber essentially asks for another bite at the apple. But he has already had two attempts to produce evidence for his claim: first, at the sentencing and the motion for new trial hearing; and second, at the evidentiary hearing on this K.S.A. 60-1507 motion. He claims that his case is like *Carter* but has not provided us with any indication that he could produce anywhere near the level of evidence in *Carter*. He notes the disciplinary proceedings against Spradling and quotes our Supreme Court's statement about her conduct in another criminal case: "Taken as a whole, this prosecution unfortunately illustrates how a desire to win can eclipse the State's responsibility to safeguard the fundamental constitutional right to a fair trial owed to any defendant facing criminal prosecution in a Kansas courtroom." *State v. Chandler*, 307 Kan. 657, 695, 414 P.3d 713 (2018). Macomber points to these as indicators that his claim is credible. But even credible speculation is still speculation. Macomber's K.S.A. 60-1507 counsel presented evidence and argued to the trial court that the phone calls presented a viable issue and appellate counsel was ineffective for missing it. Nothing about K.S.A. 60-1507 counsel's performance was ineffective. There simply was not enough evidence to present. Macomber's supposition that more evidence could arise on remand is unsupported speculation.

As a result, Macomber falls short of his burden to justify a remand. Because Macomber fails to show that his K.S.A. 60-1507 counsel was ineffective, we affirm the trial court on this issue.

*Did the trial court abuse its discretion in denying Macomber's other motions?*

After the trial court denied Macomber's K.S.A 60-1507 motion, Macomber filed a pro se motion to alter or amend the judgment and a motion for new trial. In this case, Macomber used new "trial" to mean a new evidentiary hearing on his K.S.A. 60-1507 motion. The trial court appointed new counsel, who then filed a brief in support of Macomber's pro se motion. Counsel cited the newly decided *Carter* as justification for

25

another hearing on the issue of recorded attorney-client calls. The trial court held that Macomber raised no new issues or new facts which would require a hearing.

An appellate court reviews the trial court's decision on a motion for new trial for an abuse of discretion. *State v. Breitenbach*, 313 Kan. 73, 97, 483 P.3d 448 (2021). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). The party asserting that the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021).

On appeal, Macomber contends that the trial court abused its discretion without explanation. His pro se supplemental brief airs grievances that he had with his K.S.A. 60-1507 counsel but does not go beyond simply asserting that the trial court abused its discretion. Kansas courts have a two-pronged test for reviewing a motion for a new trial: (1) The evidence must be new, meaning the defendant could not with reasonable diligence have produced it at trial; and (2) the evidence must be of such materiality that it would likely produce a different result at the new trial. *Skaggs v. State*, 59 Kan. App. 2d 121, 141, 479 P.3d 499 (2020). Macomber does not point to any legal or factual error that the trial court misapplied in its analysis. Also, and perhaps most obviously, Macomber glosses over the difference between a new trial and a new K.S.A. 60-1507 evidentiary hearing, failing to show that his motion could obtain his requested relief.

*Did the trial court err by not funding expert witness services?*

Macomber argues that the trial court erred by not funding the services of a legal expert to testify about the standard for ineffective assistance of counsel. The State argues that judges are experts on the law, making a legal expert unnecessary.

An appellate court reviews the admission or exclusion of opinion testimony under K.S.A. 2021 Supp. 60-456 for an abuse of discretion. See *State v. Hubbard*, 309 Kan. 22, 43, 430 P.3d 956 (2018). "The authorization of expert services in a criminal trial of an indigent defendant lies within the discretion of the district court. The decision will not be disturbed unless the defendant shows abuse of the trial court's discretion which results in prejudice to his substantial rights. [Citation omitted.]" *Breitenbach*, 313 Kan. at 83.

The party claiming an error occurred has the burden of designating a record that affirmatively shows prejudicial error. Without such a record, an appellate court presumes that the trial court's action was proper. *Meggerson*, 312 Kan. at 249.

Macomber complains that the trial court erred in a decision that it never made. He cites his pro se motion for legal expert testimony. But he does not provide a record citation to show that the trial court denied it. Instead, he describes how his K.S.A. 60-1507 counsel told him that he would call an expert to testify, until the last minute when he admitted that he had not arranged for an expert.

After the evidentiary hearing, Macomber moved for a new hearing and renewed his request that the trial court approve funds for an expert witness. But the trial court denied Macomber's request for another hearing, so the issue of funding an expert to testify at that hearing became irrelevant. The issue of funding an expert was never actually before the trial court, on this record. Macomber fails to designate a record showing that the trial court refused to fund an attorney expert. Because Macomber fails on his burden to designate a record showing error, we decline to address this issue

27

*Did the trial court deprive Macomber of a fair trial because of actual bias?*

Macomber's pro se brief asserts that he did not receive a fair trial because Judge Weingart was biased against him. He argues that Judge Smith erred in holding that Macomber failed to show prejudice.

Appellate courts have unlimited review over judicial misconduct claims and review them in light of the particular facts and circumstances surrounding the allegation. *State v. Boothby*, 310 Kan. 619, 624-25, 448 P.3d 416 (2019). Appellate courts exercise unlimited review over whether a trial judge's recusal is required. *State v. Moyer*, 306 Kan. 342, 369-70, 410 P.3d 71 (2017).

The party bearing the burden of proving prejudice depends on whether the failure below is classified as "judicial misconduct" or "judicial comment error." *Boothby*, 310 Kan. at 625-26. If the party alleges judicial misconduct, then the party raising the issue has the burden of establishing that the misconduct occurred and that it prejudiced the party's substantial rights. *State v. Miller*, 308 Kan. 1119, 1154, 427 P.3d 907 (2018).

An erroneous ruling, standing alone, does not establish judicial misconduct. Instead, an appellate court will look for conduct that manifests bias, prejudice, or partiality, or otherwise significantly undermines the fairness or reliability of the proceedings. See *State v. Kahler*, 307 Kan. 374, 384, 410 P.3d 105 (2018); Kansas Code of Judicial Conduct, Canon 2, Rule 2.2 Comment [3] (2022 Kan. S. Ct. R. at 495) (good-faith errors of fact or law do not violate Kansas Code of Judicial Conduct); and Canon 2, Rule 2.3 Comment [1] (2022 Kan. S. Ct. R. at 496) ("A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute."). If a proper and reasonable interpretation will render the judge's remark unobjectionable, the remark cannot be found to be prejudicial. *Miller*, 308 Kan. at 1154. But see *State v. Hayden*, 281 Kan. 112, 123-26, 130 P.3d 24 (2006) (pervasive judicial

28

misconduct in criminal case impairs defendant's right to a fair trial; judge's bias directed at both parties does not alter fact that defendant's freedom is at stake).

The trial judge is not only a moderator of the trial. The judge should endeavor to conduct the trial in an atmosphere of impartiality and, therefore, should refrain from remarks or conduct that may injure a litigant. The judge should be the exemplar of dignity and impartiality, should exercise restraint over personal conduct and statements, should avoid personal predilections, and should control personal emotions. The judge should not permit any person in the courtroom to embroil him or her in conflict. The judge should avoid behavior that tends to demean the proceedings or to undermine the judge's authority. When it becomes necessary during the trial to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, those comments should be made in a firm, dignified, and restrained manner, avoiding a quick and witty reply. The judge's comments and rulings should be limited to what is reasonably required for the orderly progress of the trial and should refrain from unnecessary disparagement of persons or issues. *Hayden*, 281 Kan. at 125.

Macomber's claim first encounters a factual obstacle. Macomber's testimony and Judge Weingart's testimony at the K.S.A. 60-1507 evidentiary hearing agreed that Judge Weingart's use of the word "evil" showed a bias against Macomber. But they disagreed about when this bias arose. Macomber's first appearance was in 2010. Judge Weingart presided over Macomber's trial, sentencing him in 2011. This court remanded 10CR60 because the journal entry did not reflect the sentence as pronounced from the bench. Macomber, 2013 WL 3455777, at *14-15. Judge Weingart entered the nunc pro tunc judgment in 2013. Macomber filed his K.S.A. 60-1507 motion in 2015. And Judge Weingart made his comment in 2016. Macomber listed adverse rulings in an attempt to show that Judge Weingart's bias was present as far back as his trial, but Judge Smith reviewed those rulings and disagreed.

Typically, an appellate court applies de novo review when it has the same access to the motion, records, and files as the trial court. The appellate court is not bound by the trial court's findings from the record. *State v. Alford*, 308 Kan. 1336, 1338, 429 P.3d 197 (2018) (summarily denying a motion to correct an illegal sentence); *State v. Wilson*, 308 Kan. 516, 520, 421 P.3d 742 (2018) (summarily denying a postsentence motion to withdraw a plea).

Although we have the same access to the transcripts as Judge Smith, his reading of the dynamic between Macomber and Judge Weingart rings true. His summary of the experience of reading the transcripts is accurate:

> "At what appears to be their first encounter in court [J]udge Weingart appropriately and respectfully reprimands Mr. Macomber for arguing a legal issue and speaking at the same time as his attorney is speaking. . . . As the case progresses and we have more and more hearings we see a change in the paradigm. Judge Weingart allows Macomber to speak. Eventually he invites Macomber to add arguments to what his counsel suggests.
>
> "This court realizes that it is possible for a transcript to conceal anger and animosity. Nevertheless, the language employed by Judge Weingart which is reflected in the record if expressed in such a fashion would be simply bizarre. Therefore the language that appears in the record should be taken at face value and as such connotes nothing but appropriate respect towards Macomber throughout the proceedings."

Judge Smith noted that some of Judge Weingart's rulings were favorable to Macomber. Judge Weingart here was contrasting Macomber's outstanding pro se pleadings and his intellectual ability with the evil acts he had been found guilty of committing by a jury of his peers. Obviously, Judge Weingart's characterization of Macomber as "evil" is unacceptable, however, it shows no prejudice or bias, when there is evidence in the record of Macomber's unprovoked violence towards the lives of his fellow human beings which would support such a characterization. Thus, we conclude

that Macomber fails to show that Judge Weingart's unfortunate remark retrospectively affected his impartiality during Macomber's trial six years earlier.

Because the trial court properly ruled that Macomber did not show that bias affected his trial, we affirm.

Affirmed.